## NATIONAL LABOR RELATIONS BOARD v. GILFILLAN BROS., Inc.

### No. 10688.

Circuit Court of Appeals, Ninth Circuit.

April 21, 1945.

Alvin J. Rockwell, Gen. Counsel, NLRB, Malcolm F. Halliday, Assoc. Gen. Counsel, David Findling, Atty., NLRB, all of Washington, D. C., and James R. Hemingway, Attorneys, NLRB, of Los Angeles, Cal., for petitioner.

Paul Nourse, of Los Angeles, Cal., for respondent.

Before DENMAN, STEPHENS and BONE, Circuit Judges.

DENMAN, Circuit Judge.

Petitioner seeks enforcement under § 10(e) of the National Labor Relations Act, 49 Stat. 449, 29 U.S.C. Sec. 151 et seq., 29 U.S.C.A. § 151 et seq., hereafter called the Act, of its order to respondent based upon the Board's finding on the facts that respondent had violated §§ 8(2) and 8(1) of the Act.

Respondent was and is engaged in the business of manufacturing radio receiving sets and refrigerators. There is sufficient evidence to support the finding that in

1937, in violation of these two sections of the Act, the respondent, through its supervisory employees and by acts of its management, dominated and controlled the organization and acts of an intra-company union of its employees, the Employees Mutual Association, hereafter called the Association.

During this period a national union of the C.I.O., the International Association of Machinists, hereafter called the I.A.M., was seeking to obtain in its membership a majority of respondent's employees. On May 1, 1937, the C.I.O. filed a petition for certification of representatives pursuant to Section 9(c) of the Act. Pursuant to that petition an election, consented to by respondent, was held and was won by the Association, and as a result the Association was certified as the collective bargaining agent of respondent's employees. Respondent then negotiated with the Association and entered into a contract with it.

Thereafter the Association remained dormant otherwise than in the annual renewal of its contract with respondent—the supervisory employees being in a position to dominate the union on each renewal. During the years prior to 1943 and in that year, respondent contributed substantial funds to the Association for purposes of picnics and other entertainments given by the Association. All the employees were invited, the respondent's contribution thereby enhancing the prestige of the company dominated union in the minds of all of them.

In May 1941 the I.A.M. filed a charge with the Board's regional office alleging that respondent had "encouraged and otherwise interfered with the formation" of the Association, had discharged an employee because of union activity on behalf of the I.A.M., and had thereby, as well as by other conduct, interfered with, restrained, and coerced its employees. On the recommendation of a field examiner of the Board and with the approval of the regional director, respondent thereafter posted in its plant a copy of a letter to the examiner stating inter alia, that respondent would " * * * instruct its foremen and leadmen not to accept places on committees of labor organizations having members in the employ of Gilfillan Bros., Inc., and not to influence the employees with respect to union affiliations in any manner; [and] that the Company agrees that it will not in any manner dominate or inter-fere with the administration of the * * * Association or any other labor organization having members among its employees."

The I.A.M. withdrew its charge.

There is abundant evidence that despite the notice, respondent's foremen continued to take a leading part in the Association and to support the petitioner's finding that they continued "to influence the employees with respect to union affiliations."

In January 1943 the I.A.M. started a further organizational campaign, during which respondent aided and encouraged the Association to increase its activity in the anticipation of a demand for an election by the I.A.M. and made wage increases to certain employees in response to the suggestion of the Association.

Thereafter, on May 5, 1943, respondent made a new contract for the year beginning May 1, 1943, with the Association, substantially changing the wage scale and raising all its employees' wages, with a renewal clause.

Upon these facts the petitioner made its finding that the Association was dominated by the respondent and ordered its disestablishment. We disagree with respondent's contention that there is no evidence showing such domination. The record amply sustains the petitioner's finding in that respect.

Respondent relies upon the petitioner's certification in 1937 that the Association represented the employees and the absence of any election thereafter. We do not agree that such a subsequent election is necessary. The dominating acts before the certification, followed by such domination thereafter, may be considered by the petitioner. The Supreme Court has so held in the recent case of Wallace Corporation v. National Labor Relations Board, 323 U.S. 248, 65 S.Ct. 238, 241, decided since the briefs were filed herein.

Respondent also contends that the Labor-Federal Security Appropriation Act, 1944, Act of July 12, 1943, Public Law 135, 78th Congress, 1st Session, Title IV National Labor Relations Board Appropriation Act, 1944, 57 Stat. 515, prevented the petitioner from continuing the proceeding against it in the fiscal year 1944. The pertinent portion of that Act reads " * * * No part of the funds appropriated in this title shall be used in any way in connection with a complaint case

arising over an agreement between management and labor which has been in existence for three months or longer without complaint being filed: Provided, That, hereafter, notice of such agreement shall have been posted in the plant affected for said period of three months, said notice containing information as to the location at an accessible place of such agreement where said agreement shall be open for inspection by any interested person."

- The complaint against respondent is dated May 22, 1943,—that is 17 days after the contract of May 5, 1943, changing the wage structure of the respondent's employees. It is based upon an amended charge against respondent by the I.A.M. dated May 5, 1943.

The complaint charges discriminating acts against the I.A.M. and favoring the Association, which acts are alleged to have continued until May 22d, the date of the complaint. The only existing contract over which there could have been a complaint when the complaint was filed was in existence less than the three months' statutory period.

The Appropriation Act of 1945, Act of June 28, 1944, Public Law 373, 78th Congress, 58 Stat. 568, contains a provision similar to that of the 1944 Act, but specifically exempts "agreements with labor organizations formed in violation of section 158, paragraph 2, title 29, United States Code"—that is with such an employer dominated organization as here found by the Board.

Since the facts bring the action of the Board within the limitations of the Appropriation Act it is unnecessary to consider the contention that these acts do not deprive the Board of its power to continue its regulation of the employer in the transactions for which no appropriation is provided. Cf. National Labor Relations Board v. Thompson Products, 9 Cir., 141 F.2d 794, 798; National Labor Relations Board v. Elvine Knitting Mills, 2 Cir., 138 F.2d 633.

■ The Board's order contained a usual omnibus clause by which, if ordered enforced, every violation of the Act hereafter charged by the petitioner would be tried by this court in a contempt proceeding. We hold the public is sufficiently protected by the portion of the petitioner's order that respondent cease and desist from

"(a) In any manner dominating or interfering with the administration of Gilfillan Employees Mutual Association, or with the formation or administration of any other labor organization of its employees, and from contributing support to Gilfillan Employees Mutual Association or to any other labor organization of its employees."

We order modified the petitioner's order by striking from section 1 the omnibus paragraph (d) thereof, and as so modified order the enforcement of petitioner's order.