**LEWIS FOOD COMPANY, a California Corporation, Plaintiff,**

v.

**LOS ANGELES MEAT AND PROVISION DRIVERS UNION LOCAL NO. 626 OF THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, an unincorporated association, Teamsters, Chauffeurs, Warehousemen and Helpers of America Local 542, an unincorporated association et al., Defendants.**

**No. 20333.**

United States District Court
S. D. California,
Central Division.

March 3, 1958.

Hill, Farrer & Burrill, Ray L. Johnson, Jr., Los Angeles, Cal., for plaintiff.

Stevenson & Hackler, Charles K. Hackler, Los Angeles, Cal., for defendants.

YANKWICH, Chief Judge.

The complaint filed on August 17, 1956, by the plaintiff, a California corporation engaged in manufacturing, producing, distributing and selling pet foods, seeks damages against two local unions under Section 187 of Title 29 U. S.C.A.

In substance, the complaint alleges that the defendants Los Angeles Meat and Provision Drivers Union Local No. 626 and Teamsters Local 542, labor organizations, have maintained an illegal picket line at the place of business of the plaintiff at 817 East 18th Street, in the City of Los Angeles, County of Los Angeles, State of California, and called a strike of some of the plaintiff's employees. This is alleged to be in violation of an order of the National Labor Relations Board made pursuant to an election conducted by the Board on or about June 6, 1952, among the employees of the plaintiff for the purpose of determining the bargaining representative of the plaintiff's employees.

The Association of Independent Workers of America, which, at the time of the election, was known as the Association of Pet Food Manufacturers Employees, —to be referred to as "the Association" —won the election, and was, on that day, certified as and now is *certified* as the bargaining representative for plaintiff's employees by the National Labor Relations Board,—to be referred to, at times, as "the Board".

On or about the 11th day of September, 1952, plaintiff entered into a contract with the Association covering the wages, hours and working conditions of its employees, which provided, among

other things, that there would be no strike or work stoppage on the part of plaintiff's employees. The contract was, at all times herein mentioned and presently is, in full force and effect.

Subsequent to that date, the defendant unions conducted acts of strike and picketing between August 19 and October 19, 1954, which picketing was renewed on June 11, 1956. The intervening facts may be summed up briefly in this manner: In early August, 1954, Local 626 began organizational efforts among plaintiff's employees and on August 19th engaged in peaceable picketing of plaintiff's place of business in Los Angeles, California. Such picketing continued until October 19, 1954, at which time it was enjoined by the order of this Court issued in the case of Yager v. Meat and Provision Drivers Local Union, Civil No. 17286–PH. Thereafter, on March 22, 1956, the Board, in case number 21–CC–190, entered its decision finding that the Union had, by such picketing, violated Section 8(b) (4) (C) of the National Labor Relations Act, 29 U.S.C.A. § 158(b) (4) (C) in that the picketing was found to be directed against the bargaining rights of the Association *as a certified union.* On May 2, 1956, an order was entered in case number 17286–PH dissolving this court's injunction, and on November 14, 1956, the Board notified all parties that the union had satisfactorily complied with the Board's order in its case number 21–CC–190. Meantime, on March 29, 1955, a person named Otto A. Roth filed charges against the plaintiff and the Association claiming that the latter was an illegally dominated organization within the meaning of Section 8(a) (2) of the National Labor Relations Act. 21–CA–2203 and 21–CB–708. Local 626 had itself lodged similar company union charges as early as August 27, 1954. Both of these charges remained under investigation by the Regional Office of the Board during all of the Board and Court proceedings described above.

On April 30, 1956, the Board issued a formal complaint against the plaintiff and the Association, based upon the last mentioned charges which alleges, in part, the following:

"9. The Employer since on or about January, 1952, has dominated and interfered with the formation and administration of the Association and has contributed financial and other support to the Association.

"10. The Employer since on or about February 27, 1954, has dominated, assisted and contributed to the support of, and interfered with the administration of the Association."

Since June, 1956, Local 626 has maintained a picket line at the place of business of the plaintiff, allegedly in protest against plaintiff's control over the certified Association. The complaint alleges that the true purpose of the picketing is

"to engage in, or to induce or encourage the employees of the plaintiff and employers with whom plaintiff does business to engage in, a strike or a concerted refusal in the course of their employment to use, manufacture, process, transport or otherwise handle or work on any goods, articles, materials or commodities, or to perform any services, an object thereof being to force or require plaintiff to recognize or bargain with said defendant union as the representative of plaintiff's employees notwithstanding another labor organization, to-wit, the Association of Independent Workers of America, has been certified as the representative of plaintiff's employees under the provisions of the National Labor Relations Act."

After averring that the acts and conduct of the defendants relate to trade, traffic and commerce among the several states, and have led to a labor dispute burdening and obstructing commerce and the free flow of commerce, and that it was done maliciously, the complaint seeks actual damages in the sum of

$300,000 and exemplary damages in the sum of $50,000.

It is not necessary, for the purposes of this opinion, to outline the answer filed on behalf of Local 626, which admits many of the facts just outlined. It is sufficient to state that, in the main, it seeks to avoid the consequences of the acts by alleging that the object of the present proceedings instituted before the Board is to declare that the Association is not only dominated by the employer at the present time, but was so dominated at the time of, and prior to, the certification on June 6, 1952.

Invoking the doctrine of "primary jurisdiction", the answer sets forth a plea in abatement, in which it is claimed that, because of the nature of the present proceedings, the Board might, in a new order, declare that employer domination existed at the time of the certification. For this reason, it is urged that the action be abated and

"* * * no further proceedings be taken until the National Labor Relations Board has issued a final and binding decision in its cases numbered 21–CA–2061, 2203 and 21–CB–708".

The defendants argue that because the subsequent proceeding attacks the correctness of the certification of the Association as bargaining representative, this action, which seeks damages by reason of unfair labor practices for alleged picketing and encouragement of strikes while the plaintiff had a contract with the certified union (29 U.S.C.A., § 187 (b)) should abate and abide the decision of the Board in the new proceeding.

▆ The argument is without merit. Section 187 of 29 U.S.C.A. creates a private right of action in favor of the employer to recover damages against any union guilty of any of the unfair practices denounced in the other subdivisions of the Section. The Supreme Court has held that the remedy is not

"dependent on any prior administrative determination that an unfair labor practice has been committed. Rather, the opposite seems to be true." International Longshoremen's & Warehousemen's Union v. Juneau Spruce Corp., 1952, 342 U.S. 237, 244, 72 S.Ct. 235, 239, 96 L.Ed. 275.

Rightly. For the remedy of the employer is independent of any action the Board may take to enforce the same provision. The action is akin to the private action for treble damages by persons injured by the violation of the anti-trust laws of the United States (15 U.S. C.A. § 15) in addition to the remedies by criminal action and civil action instituted by the Government. 15 U.S.C.A. §§ 1–5.

▆ It is true that the National Labor Relations Board, after certifying a bargaining representative, may, after the lapse of a twelve-months' period, revoke the certification, disestablish the certified union, and certify another. 29 U.S.C.A. § 159(c) (3); Wallace Corporation v. National Labor Relations Board, 1944, 323 U.S. 248, 249, 65 S.Ct. 238, 89 L.Ed. 216; National Labor Relations Board v. Gilfillan Bros., 9 Cir., 1945, 148 F.2d 990, 991. Subject to judicial review to enforce unfair labor practice orders, the issuance or the revocation of certification is entrusted expressly and solely to the Board. However, as stated by the Court of Appeals for the Fifth Circuit:

"Whether or not the Union has lost that status is for the Board to determine upon orderly statutory procedure." National Labor Relations Board v. Sanson Hosiery Mills, 5 Cir., 1952, 195 F.2d 350, 353–354.

▆ An existing certificate must be honored by both sides until it is lawfully rescinded. Brooks v. National Labor Relations Board, 1954, 348 U.S. 96, 103, 75 S.Ct. 176, 99 L.Ed. 125.

▆ There is unanimity among the Courts in giving recognition to this principle. As said by the Court of Appeals for the Fifth Circuit:

"* * * the decisive thing is the certification by the Board. Un-

til by Board action it is effectually extinguished, it has continued vitality to protect an employer against a raiding rival whose objective is 'forcing or requiring [such] employer to recognize or bargain with * * * [it] * * * as the representative of [his] employees * * *'" Parks v. Atlanta Printing Pressmen and Assistant's Union, 5 Cir., 1957, 243 F.2d 284, 290.

In the light of these rulings, we cannot apply, as the union would have us do, in this area, principles which command courts to *defer* action while administrative action involving the same matter is pending. The cases invoked relate to entirely different situations, arising out of dissimilar relationships in instances in which the administrative agency has *exclusive* jurisdiction.

Thus, in General American Tank Car Corp. v. El Dorado Terminal Co., 1940, 308 U.S. 422, 60 S.Ct. 325, 84 L.Ed. 361, an action on a contract between a shipper and a railroad was stayed while there was pending before the Interstate Commerce Commission the question of the validity of the contract as an unlawful rebate under the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq.

In Far East Conference v. United States, 1952, 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576, an action by the Government for alleged violation of the Sherman Anti-Trust Law by steamship owners was ordered dismissed because the Federal Maritime Board had initial jurisdiction of the matter.

In all these cases there was pending before the Administrative Board the determination of facts which, when finally determined, would not only affect, but *control* the actions before the courts involving similar facts. So the courts applied what is known as the primary jurisdiction doctrine under which courts will not determine a matter which is within the exclusive jurisdiction of an administrative agency, while the same question is pending before the agency. See, Rochester Telephone Corp. v. United States, 1939, 307 U.S. 125, 138, 59 S.Ct.

754, 83 L.Ed. 1147; Thompson v. Texas Mexican Ry. Co., 1946, 328 U.S. 134, 146–151, 66 S.Ct. 937, 90 L.Ed. 1132. But in none of these cases were the courts confronted with a statute giving to a person a right of action for past occurrences, the nature of which could not possibly be affected by future administrative action.

The summary of the cases just given shows clearly the distinction. This may be further illustrated by Nathanson v. National Labor Relations Board, 1952, 344 U.S. 25, 73 S.Ct. 80, 97 L.Ed. 23, also cited by the defendants. There, the National Labor Relations Board had ordered the Company to pay back-pay. After an involuntary petition in bankruptcy was filed, the Court of Appeals ordered the order enforced. The Board then filed a proof of claim for the back-pay. The Supreme Court held that the bankruptcy court should not assume to determine the validity of the claim, but rather the Board should have the final determination, saying:

"It is the Board, not the referee in bankruptcy nor the court, that has been entrusted by Congress with authority to determine what measures will remedy the unfair labor practices. We think wise administration therefore demands that the bankruptcy court *accommodate itself to the administrative process and refer to the Board the liquidation of the claim, giving the Board a reasonable time for its administrative determination.*" 344 U.S. at page 30, 73 S.Ct. at page 83. (Emphasis added.)

The Supreme Court, in a case decided on February 3, 1958, has warned that, while the power of the National Labor Relations Board in disestablishing a union as dominated by an employer is broad, it is "not limitless" (National Labor Relations Board v. District 50, United Mine Workers of America and Bowman Transportation, Inc., 355 U.S. 453, 458; 78 S.Ct. 386).

In the case before us, the Board not only certified the Association, but re-

jected contentions made by the same unions who are appearing here that the Association was employer-dominated. It follows that even if the Board, in the present proceedings, should hold that the Association is union dominated and disestablish it, this could not affect its prior certification of June 6, 1952, so as to deprive the employer who complied with it, *as he was required to do*, of the right to prove in this Court that *between* the date of the original certification and *before* its revocation, the union by its actions, caused him damage. To hold otherwise, would make the remedy of the employer illusory. For he could *never* depend on the finality of the certification in instituting an action for damages.

■■ We are bidden to avoid interpreting a statute retrospectively unless the Congress has specifically indicated a clear intention to so apply it. As said in a leading case:

"Statutes are not to be given retroactive effect or construed to change the status of claims fixed in accordance with earlier provisions unless the legislative purpose so to do plainly appears." United States v. Magnolia Petroleum Co., 1928, 276 U.S. 160, 162–163, 48 S.Ct. 236, 237, 72 L.Ed. 509.

And see, Hassett v. Welch, 1938, 303 U.S. 303, 314, 58 S.Ct. 559, 82 L.Ed. 858.

In Claridge Apartments Co. v. Commissioner, 1944, 323 U.S. 141, 164, 65 S.Ct. 172, 185, 89 L.Ed. 139, the Court summed up the principle in this pithy manner:

"Retroactivity, even where permissible, is not favored, except upon the clearest mandate."

■ Concededly, the Congress, in matters dealing with the employer and employee relationship, may take away a right it has previously conferred, as happened with the passage of the Portal-to-Portal Act (29 U.S.C.A. §§ 251–262), and give its action retroactive effect. Battaglia v. General Motors Corp., 2 Cir., 1948, 169 F.2d 254, 259–262; Thomas v. Carnegie-Illinois Steel Corp., 3 Cir.,

1949, 174 F.2d 711. Nevertheless, the Congress, in establishing the private remedy involved in this action, has not shown any intention to do so. The Congress, by giving the right of action to any employer injured by the provisions of Subsection (a) of Section 187, Title 29 U.S.C.A., used the *imperative* throughout: "Whoever *shall* be injured in his business or property" is given the right to sue, and "*shall* recover the damages by him sustained." So that, while it is given to the employer to determine whether *he will sue*, once he has been injured, and exercised that right, he is entitled to such damages as he may establish judicially to have suffered from the forbidden acts. No subsequent action by the Board relating to certification could deprive the employer of the *right he has acquired to sue on union action*, which, in defiance of a certification which has become final, has damaged his business or property.

■ Where two remedies have been given by the Congress, the Courts *will enforce both*, although one be administrative and the other judicial, unless the language of the statute is clear enough to bring the case within the purview of the primary jurisdiction doctrine already referred to, the foundation for which was laid by the Supreme Court in 1907, in Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co., 1907, 204 U.S. 426, 440–442, 27 S.Ct. 350, 51 L.Ed. 553. Thus, where the United States brought action under Section 15 of the Clayton Act (15 U.S.C.A. § 25) to enjoin the violation by several corporations of the provision against interlocking directorates contained in Section 8 of the Act (15 U.S.C.A. § 19), the Supreme Court rejected the contention that because Section 11 of the same Act (15 U.S.C.A. § 21) allows the Interstate Commerce Commission to enforce the section, the action could not be entertained, by stating:

"Section 11 does authorize the Commission to enforce § 8. But any inference that administrative jurisdiction was intended to be ex-

clusive falls before the plain words of § 15: 'The several district courts of the United States are hereby invested with jurisdiction to prevent and restrain violations of this Act * * *.' [38 Stat. 736], 15 U.S.C. § 25, 15 U.S.C.A. § 25. And the cases have spoken of Congress' design to provide a scheme of dual enforcement for the Clayton Act." United States v. W. T. Grant Co., 1953, 345 U.S. 629, 631–632, 73 S.Ct. 894, 896, 97 L.Ed. 1303.

In the matter before us, it is quite evident that the Congress intended to grant to the employer a right of action for damages which the Supreme Court has stated is not tied to, or dependent on, the status of administrative proceedings relating to the same controversy before the National Labor Relations Board. International Longshoremen's & Warehousemen's Union v. Juneau Spruce Corp., 1952, 342 U.S. 237, 244, 72 S.Ct. 235, 96 L.Ed. 275. The object of statutes of this character is to aid the furthering of the social policy of the law by providing the private action by an individual for damages caused by the violation of the Act,—as in the case of a private action for treble damages for violation of the anti-trust laws. 15 U.S.C.A. § 15. And see the writer's opinions in Balian Ice Cream Co. v. Arden Farms Co., D.C.Cal.1950, 94 F.Supp. 796, 801, and cases cited in Notes 20, 21 and 22 thereof; Fanchon & Marco v. Paramount Pictures, Inc., D.C.Cal. 1951, 100 F.Supp. 84, 88, and cases cited in Footnote 5.

Grant that the National Labor Relations Act embodies a complete scheme for the determination of labor and management disputes affecting interstate commerce, which leaves no room for judicial intervention except by way of enforcement of the Board's orders by the Courts of Appeals, Myers v. Bethlehem Shipbuilding Corporation, 1938, 303 U.S. 41, 47–50, 58 S.Ct. 459, 82 L.Ed. 638. And see, the writer's opinion in Northrop Corp. v. Madden, D.C.Cal.1937, 30 F. Supp. 993, 995. Nonetheless, the Congress must be presumed to have envisaged the situation in which a private court action might be pending at the same time as an administrative action. The Congress having authorized both actions, it is our duty to give them full effect. The more so, as any future determination by the Board as to certification *could not affect* the present action. The reason is obvious. The acts of which the employer complains in this action occurred at the time when the employer was required to comply with the action of the Board in certifying the Association as a bargaining agent. If he was damaged by the action of the union defendants in this case, he is entitled to recover even though by later action the Board should disestablish the Association and recognize another collective bargaining representative.

The motion to abate will be denied.