NATHANSON, TRUSTEE IN BANKRUPTCY, *v.*
NATIONAL LABOR RELATIONS BOARD.

No. 33.  Argued October 23, 1952.—Decided November 10, 1952.

*Joseph Kruger* argued the cause for petitioner. With him on the brief were *Alan J. Dimond* and *Henry Friedman.*

*Mozart G. Ratner* argued the cause for respondent. With him on the brief were *Acting Solicitor General Stern, George J. Bott, David P. Findling, Owsley Vose* and *Irving M. Herman.*

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

Respondent, the National Labor Relations Board, issued a complaint against the present bankrupt company alleging unfair labor practices, and, after appropriate proceedings, ordered the bankrupt to pay certain employees back pay which they had lost on account of an unfair labor practice of the bankrupt. Before the order was enforced by the Court of Appeals an involuntary petition had been filed against the company. Thereafter the Court of Appeals entered its decree, enforcing the Board's order. In due course the Board filed a proof of claim for the back pay which was disallowed by the referee. The District Court set aside the disallowance. 100 F. Supp. 489. The Court of Appeals affirmed (194 F. 2d 248) holding that the Board's order is a provable claim in bankruptcy, that the Board can liquidate the claim, and that it is entitled to priority as a debt owing to the United States under § 64 (a)(5) of the Act. The petition for certiorari was granted because of a conflict on the question of priority between that decision and *Labor Board* v. *Killoren,* 122 F. 2d 609, decided by the Court of Appeals for the Eighth Circuit.

We think the Board is a creditor as respects the back pay awards, within the meaning of the Bankruptcy Act.[1] The Board is the public agent chosen by Congress to enforce the National Labor Relations Act. *Amalgamated Workers* v. *Edison Co.,* 309 U. S. 261, 269. A back pay order is a reparation order designed to vindicate the public policy of the statute by making the employees whole for losses suffered on account of an unfair labor practice. *Phelps Dodge Corp.* v. *Labor Board,* 313 U. S. 177, 197. Congress has made the Board the only party entitled to enforce the Act. A back pay order is a command to pay an amount owed the Board as agent for the injured employees. The Board is therefore a claimant in the amount of the back pay.

The claim is provable as a debt founded upon an "implied" contract within the meaning of § 63 (a)(4) of the Bankruptcy Act.[2] It is an indebtedness arising out of an obligation imposed by statute—an incident fixed by law to the employer-employee relationship. A liability based on quasi-contract is one on an "implied" contract within the meaning of § 63 (a)(4) of the Bankruptcy Act. See *Brown* v. *O'Keefe,* 300 U. S. 598, 606–607.

We do not, however, agree with the lower court that this claim, enforceable by the Board, is a debt due to the United States within the meaning of R. S. § 3466, and therefore entitled to priority under § 64 (a)(5) of the Bankruptcy Act. It does not follow that because the Board is an agency of the United States, any debt owed it is a debt owing the United States within the meaning of R. S. § 3466. The priority granted by that stat-

---

[1] " 'Creditor' shall include anyone who owns a debt, demand, or claim provable in bankruptcy, and may include his duly authorized agent, attorney, or proxy." 11 U. S. C. § 1 (11).

[2] "Debts of the bankrupt may be proved and allowed against his estate which are founded upon . . . (4) an open account, or a contract express or implied." § 63 (a)(4); 11 U. S. C. § 103 (a)(4).

ute was designed "to secure an adequate revenue to sustain the public burthens and discharge the public debts." See *United States* v. *State Bank,* 6 Pet. 29, 35. There is no function here of assuring the public revenue. The beneficiaries of the claims are private persons as was the receiver in *American Surety Co.* v. *Akron Savings Bank,* 212 U. S. 557.

It is true that *Bramwell* v. *U. S. Fidelity Co.,* 269 U. S. 483, extended the priority to a claim of the United States for Indian moneys. But that case rests on the status of the Indians as wards of the United States (see *Bowling* v. *United States,* 233 U. S. 528) and the continuing responsibility which it has for the protection of their interests. See *United States* v. *Rickert,* 188 U. S. 432, 444; *Board of Commissioners* v. *Seber,* 318 U. S. 705. We cannot extend that reasoning so as to give priority to a claim which the United States is collecting for the benefit of a private party. See *American Surety Co.* v. *Akron Savings Bank, supra.* The beneficiaries here are not wards of the Federal Government; they are wage claimants who were discriminated against by their employer. The Board has eliminated the discrimination by the back pay order; and enforcement of its order has been directed by the Court of Appeals. The full sanction of the National Labor Relations Act has therefore been placed behind the order. The Board argues that the interest of the United States in eradicating unfair labor practices is so great that the back pay order should be given the additional sanction of priority in payment. Whether that should be done is a legislative decision. The contest now is no longer between employees and management but between various classes of creditors. The policy of the National Labor Relations Act is fully served by recognizing the claim for back pay as one to be paid from the estate. The question whether it should be paid in preference to other creditors is a question to be answered from

the Bankruptcy Act. When Congress came to claims for unpaid wages it did not grant all of them priority. It limited the priority to $600 for each claimant and even then only allowed it as respects wages earned within three months before the date of the commencement of the proceedings. § 64 (a)(2). We would depart from that policy if we granted the priority to one class of wage claimants irrespective of the amount of the claim or the time of its accrual. The theme of the Bankruptcy Act is "equality of distribution" (*Sampsell* v. *Imperial Paper Corp.*, 313 U. S. 215, 219); and if one claimant is to be preferred over others, the purpose should be clear from the statute. We can find in the Bankruptcy Act no warrant for giving these back pay awards any different treatment than other wage claims enjoy.

The trustee claims that the liquidation of the back pay award should not have been referred to the Board. Section 10 (c) of the National Labor Relations Act authorizes the Board, once an unfair labor practice has been found, to require, *inter alia,* the person who committed it to "take such affirmative action, including reinstatement of employees with or without back pay, as will effectuate the policies of this Act." The fixing of the back pay is one of the functions confided solely to the Board. At the time an order of the Board is enforced the amount of back pay is often not computed. Once an enforcement order issues the Board must work out the details of the back pay that is due and the reinstatement of employees that has been directed. This may be done by negotiation; or it may have to be done in a proceeding before the Board. The computation of the amount due may not be a simple matter. It may require, in addition to the projection of earnings which the employee would have enjoyed had he not been discharged and the computation of actual interim earnings, the determination whether the employee wilfully incurred

losses, whether the back pay period should be terminated because of offers of reinstatement or the withdrawal of the employee from the labor market, whether the employee received equivalent employment, and the like. See *Phelps Dodge Corp.* v. *Labor Board, supra,* 190 *et seq.* Congress made the relation of remedy to policy an administrative matter, subject to limited judicial review, and chose the Board as its agent for the purpose.

The bankruptcy court normally supervises the liquidation of claims. See *Gardner* v. *New Jersey,* 329 U. S. 565, 573. But the rule is not inexorable. A sound discretion may indicate that a particular controversy should be remitted to another tribunal for litigation. See *Thompson* v. *Magnolia Co.,* 309 U. S. 478, 483. And where the matter in controversy has been entrusted by Congress to an administrative agency, the bankruptcy court normally should stay its hand pending an administrative decision. That was our ruling in *Smith* v. *Hoboken R. Co.,* 328 U. S. 123, and *Thompson* v. *Texas M. R. Co.,* 328 U. S. 134, where we directed the reorganization court to await administrative rulings by the Interstate Commerce Commission before adjudicating the controversies before it. Like considerations are relevant here. It is the Board, not the referee in bankruptcy nor the court, that has been entrusted by Congress with authority to determine what measures will remedy the unfair labor practices. We think wise administration therefore demands that the bankruptcy court accommodate itself to the administrative process and refer to the Board the liquidation of the claim, giving the Board a reasonable time for its administrative determination.

In summary, we agree with the Court of Appeals that the claim was provable by the Board and that the computation of the amount of the award was properly referred to the Board. But since we disagree with the rul-

ing on the priority of the claim we reverse the judgment and remand the cause for proceedings in conformity with this opinion.

*It is so ordered.*

MR. JUSTICE JACKSON, with whom MR. JUSTICE BLACK joins, dissenting.

I think we should affirm the judgment below. I agree that the claim is one which can be proved in bankruptcy by the United States. The same reasoning which enables the Government to assert the claim would seem to enable it to assert the priority.

The claims which the United States asserts herein are something more than merely private indebtedness. The debtor's liability, enforceable only by the Government, is one of the most important sanctions to effectuate the policy of the National Labor Relations Act. That is one, at least, of the reasons why Congress did not see fit to leave prosecution of these usually small claims to scattered and often impecunious individual wage earners in a multiplicity of actions.

I see nothing in the policy of the Bankruptcy Act which precludes these claims, allowed in the Government's right and in its name, from sharing in the Government's general priority. Title 11, § 104 (a) sets up five levels of priority: first is administration expenses; second, wages not to exceed $600 to each claimant which have been earned within three months before commencement of bankruptcy proceedings; third, certain costs and expenses not material here; fourth, taxes legally due and owing by the bankrupt to the United States, or any state or any subdivision thereof; fifth, debts owing to any person, including the United States, who under its laws is entitled to priority.

It can hardly be questioned that Labor Board awards constitute wages or their equivalent, but beneficiaries of

these awards rarely can comply with the three-months time limitation for wage priority because of the lag occasioned by Labor Board proceedings to establish the unlawfulness of their discharge by the employer. If they could do so, their claims would doubtless take the second priority and be paid in preference to everything except administration expenses.

The judgment below denies these claims second priority but admits them to the fifth class. Ahead of them, in the fourth class, are all taxes owing to the United States and to any state or subdivision, and this obviously is the priority intended to protect the federal revenues. Only after all revenue requirements are thus satisfied does the judgment below allow these claims to be paid. The Bankruptcy Act in this fifth category certainly contemplates a class of Government claims not arising out of taxation. It does not seem to me inappropriate to consider the relation of the Government to the wronged laborer established by the Labor Relations Act as analogous to the Government's wardship toward Indians, found to warrant invocation of its priority in *Bramwell* v. *United States Fidelity Co.*, 269 U. S. 483. The slogan "equality of distribution" can have little meaning when we are considering a section of a statute designed to establish inequality by a series of priorities. To protect the bankrupt's estate against inequalities caused by the unlawful preferences attempted by the bankrupt is one thing; to invoke such a "theme" to level out priorities created by statute is another.

While the legislation is not as complete or clear as one would like, supplying the rule for conflicts unanticipated by Congress is a large part of our work and I think the courts below have arrived at a practical solution of this question that accomplishes the purposes both of the Bankruptcy Act and the National Labor Relations Act. I would therefore affirm.