Ramona A. DROBENA, Sally Boyd, Sharon Gentry, Deanna Ussery and Dana Garner, Petitioners,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

United Steelworkers of America, AFL–CIO, CLC, Local 6178, Intervenor-Respondent.

NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

UNITED STEELWORKERS OF AMERICA, AFL–CIO, CLC, LOCAL 6178, Respondent.

Nos. 79–1366, 79–1501.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 7, 1979.

Decided Jan. 16, 1980.

Bruce N. Cameron, Staff Atty., National Right to Work Legal Defense Foundation, Fairfax, Va. (argued), Rex H. Reed, Fairfax, Va., Philip K. Lyon, House, Holmes & Jewell, Little Rock, Ark., and Mark P. Clark, Clark & Miller, Hot Springs, Ark., on brief, for petitioners.

Anton G. Hajjar, Washington, D. C. (argued), John D. Burgoyne, Asst. Gen. Counsel, John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, and Elliott Moore, Deputy Associate Gen. Counsel, Washington, D. C., on brief, for respondent, N. L. R. B.

Lynn-Marie Crider, and James E. Youngdahl, Youngdahl, Larrison & Agee, Little Rock, Ark., for intervenor-respondent, United Steelworkers of America, etc.

Before GIBSON, Chief Judge,* and STE-PHENSON and HENLEY, Circuit Judges.

HENLEY, Circuit Judge.

These two original proceedings, which have been consolidated and submitted together, involve the validity of a consent cease and desist order entered by the National Labor Relations Board and directed at Local 6178 of the United Steelworkers of America, AFL-CIO, CLC (Union) on account of certain unfair labor practices committed by officers and members of the Union at the manufacturing plant operated by National Rejectors, Inc. in Garland County, Arkansas. The parties stipulated that the Union had violated the provisions of § 8(b)(1)(A) of the National Labor Relations Act, 29 U.S.C. § 158(b)(1)(A),[1] and the order was entered as provided by § 10(c) of the Act, 29 U.S.C. § 160(c). The order directed that the Union cease and desist from the practices in question and post notices of compliance. The order did not require the Union to pay back wages to individual employees who had lost work on account of the unlawful practices of the Union.[2]

The order in question was the result of negotiations between the Union and the Regional Director of the Board. Five female employees of National Rejectors objected to the failure of the settlement agreement to provide them with back pay on account of time lost due to the unfair labor practices of the Union.[3] However, the settlement was eventually approved by the Board. The agreement stipulated that the Board might apply to this court for enforcement of the agreed order, and that an order of enforcement would be entered without any contest on the part of the Union.

In due course the Board applied to this court for enforcement of the order (No. 79–1501), and the five female employees who have been mentioned filed a petition for a review of the Board's order contending solely that the order should have made a back pay award in their favor (No. 79–1366). In No. 79–1366 the Union has been permitted to intervene as a respondent.

There is no dispute about the facts of the controversy, and the question presented in these proceedings is an extremely narrow one. The question is as to the validity of a long-standing Board policy not to make a back pay award under § 10(c) of the Act[4] in cases in which employees have lost work as the result of the direct impact on them of unlawful union activity without their employer being a participant in the unlawful activity or the conduit through which the unlawful union activity moved to affect the employees in question.

The parties are in agreement that the Board policy here challenged was first announced in 1949 in *Colonial Hardwood Flooring Co.,* 84 N.L.R.B. 563 (1949).

For a good many years that policy was based on the idea that under the wording of § 10(c) the Board had no power to order a

---

* The Honorable Floyd R. Gibson was Chief Judge of the Eighth Circuit at the time this case was submitted, and took senior status on December 31, 1979, before the opinion was filed.

1. That section makes it an unfair labor practice for a labor union to restrain or coerce employees in the exercise of rights guaranteed by § 7 of the Act, including the right to refrain, subject to certain limitations, from participating in certain union sponsored activities. 29 U.S.C. § 157.

2. As will be seen, certain employees of the Garland County plant at National Rejectors undertook to continue work in spite of a picket line that the Union had established at the plant in 1978; their efforts were interfered with and frustrated by the activities of Union officers and members, and the employees involved lost time from their work.

3. See n.2 *supra.*

4. Insofar as here pertinent, § 10(c) provides that if the Board finds that an employer or a labor union has been guilty of an unfair labor practice it is to issue a cease and desist order which may require reinstatement of displaced employees with or without back pay; under the section both an employer and a union are subject to being required to pay back wages to aggrieved employees.

union to pay back wages in a case in which the employer had not been directly or indirectly involved in the unlawful activity of the union. *See Progressive Mine Workers of America v. N. L. R. B.*, 187 F.2d 298, 307 (7th Cir. 1951). However, we are told that in more recent years the Board has justified its position not by reference to any lack of power but simply to policy considerations that will be mentioned in due course. *See Union de Tronquistas de Puerto Rico ("Lock Joint Pipe")*, 202 N.L.R.B. 399 (1973). And that is the approach that the Board has taken in this litigation.

Turning to the facts, National Rejectors is engaged in Arkansas in the business of manufacturing and selling coin and currency changing devices. It is unquestionably an employer that is covered by the Act, and the Act is applicable to its employees and to labor unions that may have become or seek to become collective bargaining agents for employees. For a number of years certain classifications of employees of National Rejectors have been represented for bargaining purposes by the intervening Union, and petitioners may have been members of the Union. Previous labor trouble between National Rejectors and the Union led to the opinion of this court in *National Rejectors Indus. v. United Steelworkers of America*, 562 F.2d 1069 (8th Cir. 1977).

In 1978 the Union established a picket line at National Rejectors' Garland County plant. Petitioners and other employees did not desire to honor the line and undertook to continue work. They were met by threats, harassment, some violence and a substantial amount of property damage.[5]

In due course, petitioners filed an unfair labor practice charge with respect to which the Board assumed jurisdiction, and a complaint against the Union was issued charging violations of § 8(b)(1)(A).[6] As has been seen, the matter was compromised and, over the objection of petitioners, a cease and desist order that did not include a back pay award was entered.

The parties agree broadly that the Board has wide discretion in approving amicable settlements of disputes between itself, on the one hand, and employers or labor unions, on the other hand, and that settlements approved by the Board need not necessarily satisfy all of the demands of every "charging party."

The parties also agree that while back pay awards are authorized by § 10(c), such awards are not mandatory, mechanical or automatic and that the making or withholding of such awards rests within the sound discretion of the Board, subject to limited judicial review. *N. L. R. B. v. Strong*, 393 U.S. 357, 358–59, 89 S.Ct. 541, 21 L.Ed.2d 546 (1969); *Nathanson v. N. L. R. B.*, 344 U.S. 25, 29–30, 73 S.Ct. 80, 97 L.Ed. 23 (1952); *Virginia Elec. & Power Co. v. N. L. R. B.*, 319 U.S. 533, 539, 63 S.Ct. 1214, 87 L.Ed. 1568 (1943); *Phelps Dodge Corp. v. N. L. R. B.*, 313 U.S. 177, 198, 61 S.Ct. 845, 85 L.Ed. 1271 (1941); *N. L. R. B. v. J. S. Alberici Construction Co.*, 591 F.2d 463, 468 (8th Cir. 1979); *Manley Transfer Co. v. N. L. R. B.*, 390 F.2d 777, 782 (8th Cir. 1968).

And, petitioners also concede that the Board's policy that has been mentioned ruled out any back pay awards in their favor. Petitioners' quarrel is with the policy itself, and they also contend that the application of the policy to this case amounted to an abuse of administrative discretion.

---

5. The record does not establish the full extent to which the individual petitioners in the case actually sustained harm on account of the Union's misconduct. As indicated, the controversy between the Board and the Union was settled; no hearing was held, and no factual findings, beyond those agreed to, were made by the agency.

6. The charge was prepared and filed on behalf of petitioners by the legal staff of the National

Right to Work Legal Defense Foundation of Fairfax, Virginia, and counsel for the Foundation represent petitioners in connection with the instant proceedings. Petitioners are also represented here by capable Arkansas counsel. The Board is represented by its own attorneys, and the Union is represented by a well known Arkansas law firm that specializes in labor litigation.

That the policy in question facilitates settlements in cases in which unions have been charged with wrongdoing is a proposition that cannot seriously be denied since, obviously, a union will be more likely to agree to a cease and desist order that does not involve payments of back wages to be made by the union than it will be to agree to an order, compliance with which will require it to make back wage payments that may be quite substantial.

Other considerations urged upon us by counsel for the Board and the Union are that back pay awards in cases of this kind may deter union members from exercising their statutorily protected right to strike and related rights, that such an award may bring about the financial ruin of a local union resulting from the irresponsible acts of one or a few members surcharged with the emotions that labor strife can produce, that computation and enforcement of such awards would unduly tax the facilities of the Board, and that in any event injured employees can find adequate redress by means of conventional judicial remedies outside the framework of the Act. Petitioners strongly urge countervailing considerations.

Counsel for petitioners concede that the Board's policy has been adhered to tenaciously for some thirty years. It has won some but not much judicial support. *N. L. R. B. v. Oil, Chemical & Atomic Workers International Union*, 476 F.2d 1031, 1037 (1st Cir. 1973); *Progressive Mine Workers of America v. N. L. R. B., supra.*[7]

It is not too much to say that the members of this panel of this court do not think highly of the Board's policy that has been described as that policy applies to the alleged facts of this case. However, it is not the function of the court to make Board policy. The policy in question is one of long standing, and we decline to disturb it. Nor, granting the validity of the policy, do we see any abuse of agency discretion in the application of the policy to this case.

The petition for review in No. 79–1366 is denied. The Board's petition for enforcement in No. 79–1501 is granted.

---

**7.** The Board has also cited us to the recent decision of the Supreme Court in *International Brotherhood of Electrical Workers v. Foust*, 442 U.S. 42, 99 S.Ct. 2121, 60 L.Ed.2d 698 (1979), wherein it was held to be contrary to national labor policy to subject a labor union to punitive damages for a willful breach of its duty of fair representation. We point out, however, that an award of back pay under the N.L.R.A. is not a "punitive" award.