**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**FUGAZY CONTINENTAL CORPORATION, Respondent.**

**No. 399, Docket 86–4031.**

United States Court of Appeals, Second Circuit.

Argued Nov. 14, 1986.

Decided April 30, 1987.

Margaret Bezou, Washington, D.C. (Michael David Fox; Rosemary M. Collyer, Gen. Counsel; John E. Higgins, Jr., Deputy Gen. Counsel; Robert E. Allen, Associate Gen. Counsel; Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., of counsel), for petitioner.

Steven S. Goodman, New York City (Roger S. Kaplan, Jackson, Lewis, Schnitzler & Krupman, New York City, of counsel), for respondent.

* Judge Mansfield participated in the oral argument in this case and voted before his death on

Before FEINBERG, Chief Judge, and MANSFIELD * and WINTER, Circuit Judges.

WINTER, Circuit Judge:

The National Labor Relations Board ("NLRB") applies for enforcement of its Supplemental Decision and Order ("Supplemental Order") requiring Fugazy Continental Corp. ("Fugazy") to reimburse discharged franchise limousine operators for their franchise fees. *Fugazy Continental Corp.,* 276 N.L.R.B. No. 152 (Sept. 30, 1985). Fugazy argues that this remedy is beyond the NLRB's authority because it creates rights that would not have existed absent the unfair labor practices and exceeds the scope of the initial order concerning Fugazy's liability. We enforce the Supplemental Order.

## BACKGROUND

On September 14, 1977, the NLRB found that Fugazy had committed unfair labor practices by unlawfully threatening, discharging, refusing to reinstate, and withholding moneys from its employees, in violation of Section 8(a)(1), (3), and (4) of the National Labor Relations Act ("Act"), 29 U.S.C. § 158(a)(1), (3), (4). The NLRB accordingly issued an appropriate cease and desist order and required Fugazy to take various affirmative steps to remedy its violations. *Fugazy Continental Corp.,* 231 N.L.R.B. 1344 (1977) ("1977 Order"). We enforced the NLRB's order in its entirety in *NLRB v. Fugazy Continental Corp.,* 603 F.2d 214 (2d Cir.1979) (enforced without published opinion).

We briefly summarize the facts pertinent to our review. Fugazy provided limousine service to the public through limousine operators who had purchased franchises from Fugazy. In November 1975, Division 1181–1061 of the Amalgamated Transit Union, AFL–CIO ("Union") began to organize these franchise operators. Fugazy responded with a number of unfair labor practices that included: terminating the franchise of an operator active in the Un-

January 7, 1987, to dispose of the case in the manner set forth in this opinion.

ion's organizational campaign, terminating the franchises of thirty-nine operators who participated in a strike, failing to pay strikers moneys due them for work performed before the strike, insisting that some operators release Fugazy from unfair labor practice claims as a condition of their reinstatement or purchase of a limousine from Fugazy, refusing to reinstate other striking operators, and threatening to terminate operators who signed union cards. *See* 1977 Order, 231 N.L.R.B. at 1353–58.

Central to the NLRB's ruling was the conclusion that the franchise limousine operators were "employees" rather than "independent contractors" within the meaning of the Act. The NLRB thus found that although the franchise agreements between Fugazy and its operators purported to treat the operators as independent contractors, the "parties' conduct in the performance of their respective obligations" under the agreements and other relevant facts contradicted the formal terms of the agreements. *Id.* at 1349. Because the operators had "only minimal discretion in the management of [their] business affairs and [Fugazy] exercise[d] extensive control over the most significant aspects of the franchise drivers' work," the NLRB considered the operators to be employees. *Id.* at 1353.

This conclusion was bolstered by a finding that operators had only a limited possibility of sale with regard to their franchises. Although the franchise agreements formally allowed the operators to sell their franchises, the franchise was only for two years, and renewal was subject to the terms "then being offered" by Fugazy. Moreover, Fugazy had a unilateral and virtually unlimited right to cancel a franchise without refunding the franchise fee. The NLRB concluded that the operators' ability to sell their franchises was too limited as a practical matter to be compatible with an independent contractor relationship. *Id.* at 1352–53.

The 1977 Order required Fugazy, *inter alia,* to offer the discharged operators reinstatement to their former jobs or equivalent positions if those jobs did not exist. Fugazy was also ordered to make each operator "whole for any loss of earnings and other losses he may have suffered by reason of [Fugazy's] unlawful discrimination," *id.* at 1360, including back pay, interest, and "the difference between the value of his franchise as of the date on which [Fugazy] should have offered that driver reinstatement to his former position and the date on which [Fugazy] does offer him reinstatement." *Id.* at 1359. Many of the operators did not accept Fugazy's offers of reinstatement.

The parties failed to reach agreement on the amount of back pay owed to the operators. After a fifteen-day hearing, the administrative law judge ("ALJ") issued his findings, which were subsequently adopted in relevant part by the NLRB's Supplemental Order. *See* 276 N.L.R.B. No. 152 (Sept. 30, 1985). This application for enforcement followed.

The Supplemental Order again requires Fugazy to make whole its discharged operators by reimbursing them, *inter alia,* for lost pay and benefits. However, the Supplemental Order also requires Fugazy to reimburse each operator who did not accept reinstatement "to the full extent of his investment in his franchise." In contrast, the 1977 Order specified reimbursement only for any decrease in the value of a franchise while the operator was unlawfully discharged.

The ALJ found that the reimbursement of the franchise fees was necessary to make such operators whole. He specifically noted that most of the discharged operators had been replaced and many had been "spurned" by Fugazy when they asked the company to repurchase their franchises or assist them in finding buyers for their franchises. He also found that reinstatement was no longer feasible in most cases. The ALJ concluded, therefore, that Fugazy's retention of the franchise fees would fail to make operators who had not accepted reinstatement whole and would unjustly enrich Fugazy. The amounts awarded totaled $468,868.

Fugazy challenges the Supplemental Order solely with respect to its requirement that the operators' franchise fees be reim-

bursed. Fugazy argues that this remedy gives to the operators rights to which they would not have been entitled in the absence of a violation, and is thus an impermissible punitive award. Fugazy also claims that reimbursement of franchise fees is arbitrary and capricious because the operators in question refused reinstatement. Rather, it claims that the backpay proceedings should have determined only the decrease in value of the franchises, as directed in the 1977 Order.

## DISCUSSION

Our authority to overturn the Supplemental Order is limited by the NLRB's broad discretion to shape remedies for unfair labor practices. Section 10(c) of the Act, 29 U.S.C. § 160(c), provides that the NLRB shall order the perpetrator of an unfair labor practice "to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies" of the Act. The Supreme Court "has repeatedly interpreted this statutory command as vesting in the Board the primary responsibility and broad discretion to devise remedies that effectuate the policies of the Act, subject only to limited judicial review." *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 898–99, 104 S.Ct. 2803, 2812–13, 81 L.Ed.2d 732 (1984). The administrative determination that a particular remedy is necessary to effectuate those policies "should stand unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act." *Virginia Electric & Power Co. v. NLRB*, 319 U.S. 533, 540, 63 S.Ct. 1214, 1218, 87 L.Ed. 1568 (1943).

Remedies under the Act are "designed to vindicate the public policy of the statute by making the employees whole for losses suffered on account of an unfair labor practice," *Nathanson v. NLRB*, 344 U.S. 25, 27, 73 S.Ct. 80, 82, 97 L.Ed. 23 (1952), and to "guard against rewarding an employer for his own misconduct." *NLRB v. J. Coty Messenger Service, Inc.*, 763 F.2d 92, 101 (2d Cir.1985).

This issue thus is whether the NLRB could reasonably have concluded that franchise fee reimbursement would either make the discharged operators whole for losses suffered as a result of the unfair labor practices or prevent unjust enrichment of Fugazy. We believe it could on either ground.

First, the reimbursement of franchise fees was reasonably necessary to return the operators to the position they would have been in but for their unlawful discharge. The operators had purchased franchises from Fugazy that entitled them to work as limousine drivers and to renew their franchises, albeit on the terms "then being offered to new Franchisees," every two years at no additional cost. Because the right to sell the franchise was largely illusory, Fugazy's discharge of the operators deprived them of the primary right granted by the franchise agreement, namely, to continue as Fugazy drivers without payment of further fees. To be sure, Fugazy had the unilateral contract right to terminate the franchises for non-union related reasons much as employers generally may have a contract right to terminate any employee for similar reasons. By terminating the operators in violation of the Act, however, Fugazy deprived the operators of their expected renewal without further fees much as a union-related discharge deprives employees of expected future wages. Consequently, only full reinstatement of the operators, with the concomitant expectation of a feeless renewal, or full reimbursement of the franchise fees to those not reinstated would make the operators whole.

Fugazy argues that its offer of reinstatement to the discharged operators was sufficient. Because those operators would not have been entitled to reimbursement of the franchise fees had they freely terminated their franchises once reinstated, Fugazy argues, they cannot now be entitled to such reimbursement having voluntarily refused reinstatement. We disagree. More than two years had passed between the termination of the operators and the offers of reinstatement. It was entirely reasonable for the operators to have pursued other

employment opportunities during this period, *cf. NLRB v. Gordon,* 792 F.2d 29, 34 (2d Cir.) (reasonable to expect employees to seek new jobs four months after discharge), *cert. denied,* — U.S. ——, 107 S.Ct. 402, 93 L.Ed.2d 355 (1986), and to avoid the hardship of changing jobs once again. We cannot say that the NLRB exceeded its authority in recognizing that the passage of time excused employees from accepting reinstatement and in determining that such employees could be made whole only by reimbursement of the franchise fees.

Second, the remedy was reasonably designed to prevent Fugazy from being unjustly enriched as a result of its unfair labor practices. After discharging its operators in December 1975 without refunding their franchise fees, Fugazy refused to help them sell their franchises to new drivers. It then hired replacements and charged them new franchise fees. As a result, Fugazy has received the benefit of two franchise fees for many of the positions held by discharged operators. To avoid rewarding Fugazy for its illegal acts, therefore, the NLRB was also within its discretion in choosing to reimburse the discharged operators.

Fugazy also claims that the NLRB is altering the remedy imposed by the 1977 Order. The supplemental back-pay proceedings, Fugazy argues, should have determined only the amount of back pay owed and the decrease in value of the franchises. This argument, however, is also without merit. In the 1977 Order, the NLRB determined that there had been a violation and that certain affirmative relief was necessary to effectuate the Act's policies. Articulating one of these general remedies, the NLRB ordered Fugazy to "[m]ake each of the employees named ... whole for any loss of earnings and other losses he may have suffered...." 231 N.L.R.B. at 1360. The list of particular forms of relief, which included reimbursement of back pay and the decrease in value of the operators' franchises, did not purport to be exhaustive. The conclusion that among the "other losses" suffered by the operators was "the loss of their entire capital investment" was thus not beyond the NLRB's power.

The NLRB's Supplemental Order is enforced.