NATIONAL LABOR RELATIONS
BOARD, Applicant,

v.

Laura McDERMOTT, Respondent.

Civ.A. No. 03–WM–99 (PAC).

United States District Court,
D. Colorado.

June 16, 2003.

Michael T. Pennington, Denver, CO, for National Labor Relations Board.

Daniel Sears, Denver, CO, for respondent.

## ORDER

MILLER, District Judge.

This case is before me on the National Labor Relations Board's (Board) application for an order requiring respondent Laura McDermott to obey subpoenas *duces tecum* and *ad testificandum* issued by the Board in September 2002. For the reasons that follow, the application will be granted.

### Background

The Board seeks information from McDermott regarding her husband, Robert Gordon, including his whereabouts and the location of any assets attributable to him.

On April 10, 2000, the Tenth Circuit entered a supplemental judgment enforcing an order of the Board finding Gordon, and three corporate entities,[1] jointly and severally liable for back pay and delinquent employee benefit fund contributions. *National Labor Relations Board v. I.W.G., Inc.*, No. 00–9509, 2000 WL 34023614 (10th Cir. April 10, 2000). Application, Exhibit 3. A second supplemental judgment, issued by the Tenth Circuit on April 3, 2002, set the total amount of Gordon's liability at $821,594. *Id.*, Exhibit 5. The Board registered the second supplemental judgment in this court as Case No. 02–J–13. *Id.*, Exhibit 9.

Gordon failed to pay the judgment and has refused all mailings from the Board since June 2, 1999. Unable to confirm Gordon's address and suspicious that Gordon may have transferred assets to his wife, McDermott, the Board issued subpoenas *duces tecum* and *ad testificandum* to McDermott on October 10, 2002. *Id.*, Exhibits 1 and 2.

McDermott's only response to the subpoenas was a letter to a paralegal for the Board stating that the request did not make sense to her.[2] On November 26, 2002, the Board sent McDermott a letter warning her it would seek judicial enforcement if she did not comply with the subpoenas. *Id.*, Exhibit 14. McDermott responded by letter on December 5, 2002, again asserting that the Board's actions did not make sense.[3] *Id.*, Exhibit 15.

On January 15, 2003, the Board filed its application, seeking an order requiring McDermott to obey the subpoenas.

### Discussion

1. *Gordon's Bankruptcy Filing*

Before I reach the merits of the Board's application, I must address the effect, if any, of pending bankruptcy proceedings filed by Gordon on February 18, 2003. On the same day as he filed his bankruptcy case, Gordon filed a notice of such filing in this court and asserted that this case must be stayed pursuant to 11 U.S.C. § 362(a). On February 27, 2003, I issued an order directing the Board to show cause why the case should not be stayed pending Gordon's bankruptcy. The Board did not directly respond to this order but instead filed a response to Gordon's notice of filing.

The Board objects to any stay of this case. It argues that Gordon lacks stand-

---

1. The corporate entities have been out of business since 1992 and are devoid of assets to satisfy the judgment debt. Application, at 5.

2. This letter is not in the record but is referenced in the Board's November 26, 2002 letter to McDermott.

3. McDermott's letter purports to be a response to a letter dated "10/26/02" which she received on December 5, 2002. I assume this date was a typographical error and that she was responding to the Board's letter of November 26, 2002.

ing to intervene in this court because the current proceeding is against McDermott, who is not a party to the bankruptcy case. *See* § 362(a) (staying, *inter alia*, actions or proceedings "against the debtor"). The Board also argues that its actions in this case are exempt from the automatic stay provision as an exercise of its police or regulatory power.[4] § 362(b)(4). *Board of Governors of the Federal Reserve Sys. of the United States v. MCorp Financial, Inc.*, 502 U.S. 32, 112 S.Ct. 459, 463–64, 116 L.Ed.2d 358 (1991).

Subsection 362(b)(4) exempts from the operation of the automatic stay:

the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's . . . police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's . . . police or regulatory power.

Subsection 362(b)(4)'s exemption applies to the automatic stay arising under subsections 362(a)(1), (2), (3), and (6).[5]

Gordon does not address the Board's argument that he lacks standing to intervene in this case. Gordon is not a party to this litigation and has not sought, or been granted, leave to intervene.[6] In addition, he has cited no authority to suggest that the Board's action against his wife, at this stage of the proceedings, implicates the concerns of section 362(a).

■ Generally, "[t]he automatic stay does not afford protection or relief for the Debtor's family or their property."[7] *In re Siskin*, 231 B.R. 514, 519 (Bankr.E.D.N.Y. 1999) (holding that non-debtor spouse lacked standing to assert a claim under section 362(h) for violation of the automatic stay). *See also In re Kizelnik*, 190 B.R. 171, 179 (Bankr.S.D.N.Y.1995) (mortgagor's granddaughter lacked standing to invoke automatic stay); *In re Lazerow*, 119

---

4. In addition, the Board contends that it may take steps to enforce a judgment so long as it does not actually seek to collect the money owed, citing section 362(b)(5). Section 362(b)(5) was repealed in 1998. The Board's ability to seek enforcement of the judgment is now part of section 362(b)(4), as it was amended in 1998. Pub.L. 105–277, Div. I, Title VI, § 603.

5. These subsections create a stay of:
 (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
 (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
 (3) any act to obtain possession of property of the estate or of property from the estate

or to exercise control over property of the estate; . . .
 (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title[.]
 § 362(a)(1)–(3), (6).

6. Because Gordon is not a party here, I decline to address his arguments, on the merits of the Board's application, that the Board cannot take action against McDermott because she was not involved in the Board action leading to the judgment against Gordon or because a fraudulent conveyance action is the property of the bankruptcy estate under 11 U.S.C. §§ 541, 548.

7. The automatic stay may apply to a non-debtor in special circumstances, such as where there is identity of interest between a debtor and a third party so that a judgment against a non-debtor would be binding on a debtor. *In re Siskin*, 231 B.R. 514, 518–19 (Bankr.E.D.N.Y.1999).

B.R. 74, 77 (Bankr.D.Md.1990) (noting that automatic stay did not preclude creditor from pursuing collection from debtor's wife), *aff'd*, 139 B.R. 802 (D.Md.1992). *Cf. In re Mako, Inc.*, 985 F.2d 1052, 1053 n. 1 (10th Cir.1993) (abating appeal as to debtor but proceeding as to remaining parties). I agree with the Board that Gordon may not invoke the automatic stay in this case.

Even assuming Gordon has standing, however, I would conclude that the exemption of section 362(b)(4) applies here. Gordon's arguments to the contrary are based on his interpretation of the Board's action in this case as an attempt to collect on a judgment against him and as motivated by a pecuniary purpose.[8]

Gordon's first argument cannot stand against the Board's express concession that it is not engaged in an attempt to seize Gordon's property or otherwise to collect against the bankruptcy estate. The Board states that it will only initiate an action to seize Gordon's property "within the purview of the bankruptcy proceeding." Response to Notice of Filing, at 5. The Board's application seeks relief only against McDermott [9] and does not threaten assets of the bankruptcy estate. *See, e.g., In re Carib–Inn of San Juan Corp.*, 905 F.2d 561, 562 (1st Cir.1990) (NLRB proceedings are not automatically stayed by bankruptcy absent special circumstances, including that the Board proceedings "will threaten estate assets"). *See also Nat'l Labor Relations Bd. v. P\*I\*E Nationwide, Inc.*, 923 F.2d 506, 512 n. 5

(7th Cir.1991) (noting that NLRB acknowledged its remedy for collection was through the bankruptcy court).

■ Gordon's second argument, that the Board's action fails the "pecuniary purpose" test, is contrary to established authority. Many courts, including the Tenth Circuit, apply two tests to determine whether a governmental proceeding is exempt from the automatic stay. *Eddleman v. United States Dep't of Labor*, 923 F.2d 782, 791 (10th Cir.1991). The "pecuniary purpose" test asks whether the government's action relates primarily to the protection of a pecuniary interest in the debtor's property. *Id.* If so, the proceeding is not exempt. The "public policy" test distinguishes between "proceedings aimed at effectuating public policy and those aimed at adjudicating private rights"; the former are exempt from the stay, but the latter are not. *Id.*

■ I find that the Board's application in the instant case is exempt under either test. *Id. See also Nat'l Labor Relations Bd. v. Continental Hagen Corp.*, 932 F.2d 828, 833–34 (9th Cir.1991). First, the Board's application stems from a judgment entered upon findings that Gordon engaged in various unfair labor practices. Although the Board is now seeking means to enforce that judgment, it is not acting *primarily* to line its own pockets but to give teeth to the penalties for violations of the labor laws which it is entrusted to enforce. *See Nathanson v. Nat'l Labor Relations Bd.*, 344 U.S. 25, 73 S.Ct. 80, 83,

---

8. Gordon does not, and cannot, argue that the Board is not a governmental unit for purposes of section 362(b)(4). *Nat'l Labor Relations Bd. v. Evans Plumbing Co.*, 639 F.2d 291, 293 (5th Cir. Unit B 1981). *See also Nat'l Labor Relations Bd. v. Continental Hagen Corp.*, 932 F.2d 828, 832 (9th Cir.1991) ("There is widespread agreement among the circuits that the National Labor Relations Board ... fall[s] within the category of a governmental unit").

9. The Board states that its purpose in this case "is to investigate the possible derivative liability of, or fraudulent conveyances to, a third party, Laura McDermott, as well as to obtain from McDermott information about the extent and location of any assets belonging to [Gordon]." Response to Notice of Bankruptcy Filing at 4–5.

97 L.Ed. 23 (1952) (Board is Congress's agent to enforce the National Labor Relations Act). Second, the Board's primary purpose is to give effect to public law and policy; it is not a forum for private disputes. *Continental Hagen Corp.*, 932 F.2d at 833–34 (Board actions pass the public policy test) (quotation omitted). *See also Eddleman*, 923 F.2d at 791 (finding Department of Labor's "pursuit of debarment and liquidation of back-pay claims" was exempt from automatic stay under either test where action was "primarily to prevent unfair competition in the market" and use of remedy was not an assertion of private rights).

I conclude the Board's application is exempt from the automatic stay pursuant to section 362(b)(4).

### 2. *Merits of Board Application*

29 U.S.C. § 161(1) authorizes the Board to issue subpoenas requiring testimony or production of evidence relating to "any matter under investigation or in question." When the subject of a subpoena refuses to obey, the Board may apply for a court order requiring that person "to appear before the Board, its member, agent, or agency, there to produce evidence ... or to give testimony touching the matter under investigation or in question[.]" § 161(2). Failure to obey such an order is punishable by contempt. *Id.*

 My role in reviewing the application is narrow: I must determine whether there is a pending matter before the Board and whether the evidence sought in the subpoena "relates to or touches the matter under investigation." *Nat'l Labor Relations Bd. v. Dutch Boy*, 606 F.2d 929 (10th Cir.1979). I must enforce the Board's sub-

poenas if they further a legitimate statutory purpose, if the information sought is reasonably relevant to that purpose, and if the Board has observed the proper statutory procedures. *Nat'l Labor Relations Bd. v. Frazier*, 966 F.2d 812, 815 (3d Cir. 1992).

In its application for an order pursuant to section 161(2), the Board specifies the information is seeks from McDermott, including documentary and testimonial information regarding:

1. any money, property, or other assets transferred from Gordon to McDermott or others;

2. any form of assets owned or controlled by Gordon;

3. any source of earnings or other income received or controlled by Gordon; and

4. other matters that may bear upon the Board's ability to obtain compliance with or satisfaction of the judgment, including the location of Gordon and the possible derivative liability of previously unnamed parties or individuals, including Laura McDermott.

Application, at 9–10.[10] The Board details its unsuccessful attempts to locate Gordon and/or his assets and the reasons why it believes McDermott may have information relevant to its investigation (including that she lives at his last known address and is the registered owner of the property).

McDermott filed a response to the Board's application on February 18, 2003. She argues that the use of the administrative subpoena process is not proper under the circumstances of this case because she was not a party to the Board's action leading to the judgment at issue. In addi-

---

**10.** In its reply to McDermott's response, the Board notes that it believes it has now determined Gordon's address. Reply at 2 n.1.

tion, McDermott contends that the Board may not rely on its subpoena power because it is not seeking information related to a matter currently under investigation. Response, at 5 ("Exercise of the Board's subpoena power to collect upon a judgment that has become final is not a matter under investigation within the scope of 29 U.S.C. § 161"). She suggests that the Board should proceed against Gordon, if at all, by means of the procedures of Fed. R.Civ.P. 69 (governing execution of judgments).

The Board replies to McDermott's arguments and also contends that McDermott has waived her objections to the subpoenas because she did not exhaust the administrative remedies provided in section 161(1) and relevant regulations. These remedies include a written petition before the Board to revoke the subpoena, which must be filed within five days of the receipt of the subpoena. *See* 29 C.F.R. § 102.31(b). The subpoenas in this case notified McDermott of the revocation process and of the possibility that failure to follow the regulations should result in the loss of her ability to raise her objections in court. *See* Application, Exhibits 1 and 3.

I agree with the Board that McDermott has waived any objections to the subpoenas other than constitutional grounds or an argument that the requirement of exhaustion would cause irreparable injury. *Maurice v. Nat'l Labor Relations Bd.*, 691 F.2d 182, 183 (4th Cir.1982)

(in absence of claim of irreparable injury, court would not address objections to subpoena where respondent failed to exhaust administrative remedies); *E.E.O.C. v. Cuzzens of Georgia, Inc.*, 608 F.2d 1062, 1064 (5th Cir.1979) (failure to exhaust available administrative remedies precluded challenge to judicial enforcement of subpoena "for any reason short of objections based on constitutional grounds"). Neither of these exceptions applies on the record before me. Because McDermott failed to exhaust her administrative remedies, I decline to address her objections to the subpoenas.[11]

Accordingly, it is ordered:

1. The application filed by the National Labor Relations Board on January 15, 2003, is granted.

2. Respondent Laura McDermott shall appear before Williams Mascioli or other agent of the National Labor Relations Board, at 600 17th Street, 7th Floor, North Tower, Denver, Colorado, at a time agreed upon by the parties, but no later than July 31, 2003, to present the testimony and the documentary evidence described in the September 10, 2002 subpoenas (Exhibits 1 and 3 to the Board's application).

3. The motion to strike sur-reply, filed March 20, 2003, by non-party Robert Gordon is denied.

---

11. Even were I to reach the merits of McDermott's objections, I would reach the same result. As stated above, my review of the application is narrow. McDermott's objections do not call into question the Board's purpose, the relevance of the information sought, or the propriety of the procedures followed by the Board. For instance, the Board may subpoena witnesses other than the persons under investigation. *Link v. Nat'l Labor Relations Bd.*, 330 F.2d 437, 439 (4th Cir.1964). In addition, the Board's subpoena power may continue after a court of appeals has ordered enforcement of an order. *Nat'l Labor Relations Bd. v. C.C.C. Assocs., Inc.*, 306 F.2d 534, 535 (2d Cir.1962). Finally, the subpoenas issued to McDermott relate to the judgment entered against her husband and are not merely a general "prying" into her affairs. *Cudahy Packing Co. v. Nat'l Labor Relations Bd.*, 117 F.2d 692, 694 (10th Cir. 1941).

4. This case shall be closed upon entry of this order.