Justice Kennedy,
with whom
Justice Souter and Justice Alito join, dissenting.
The Court of Appeals for the Fourth Circuit held that payments for workers’ compensation coverage are “contribu *669 tions to an employee benefit plan . .• . arising from services rendered.” li U. S. C. § 507(a)(5). In reversing that judgment the Court’s opinion relies on the premise that “statutorily prescribed workers’ compensation regimes do not run exclusively to the employees’ benefit.” Ante, at 655. This rationale, however, does not suffice to justify the Court’s holding. It does not accord, moreover, with the text or purpose of the bankruptcy priority defined in § 507(a)(5). These are the main points of this respectful dissenting opinion.
I
Before commencing a more detailed discussion of the central issue, certain preliminary matters must be addressed. To begin with, the Court states a background rule of construction that, when we interpret the Bankruptcy Code, “provisions allowing preferences must be tightly construed.” Ante, at 667. The Court links this rule with a general objective in the Code for equal distribution. Ibid. That objective, it is true, is acknowledged by our precedents, and we have said that a Code provision must indicate a clear purpose to prefer one claim over another before a priority will be found. See Nathanson v. NLRB, 344 U. S. 25, 29 (1952). This is different, though, from establishing an interpretive principle of strict construction when the Code addresses priorities, for strict construction can be in tension with the objective of “equality of distribution for similar creditors.” Small Business Administration v. McClellan, 364 U. S. 446, 452 (1960). The bankruptcy priorities, then, should not be read simply to give priorities to as few creditors as possible. They should be interpreted in accord with the principle of equal treatment of like claims. In any event the priority provisions should not be read so narrowly as to conflict with their plain meaning.
In accord with these principles the Court does not seem to dispute that the payments at issue here are “contributions” that “aris[e] from services rendered,” § 507(a)(5). *670 There seems little doubt that both these statutory requirements are met. Petitioner Howard Delivery Service, Inc. (Howard), argues that a contribution must be voluntary; and it says that because the workers’ compensation payments in this case are mandatory, they cannot be contributions. In some situations — for example, in discussing charitable contributions — it is possible to read “contributions” as Howard suggests. See Webster’s Third New International Dictionary 496 (1971) (defining “contribution” as “a sum or thing voluntarily contributed”). In the context of employer payments, however, the voluntariness requirement does not accord with the usual meaning of the word. See ibid, (defining “contribution” alternatively as “a sum paid by an employer to an unemployment or group-insurance fund”). Many federal statutes and this Court’s own eases expressly refer to “mandatory contributions” when discussing payments by employers and employees. See, e. g., 26 U. S. C. § 411(a)(3)(D); 29 U. S. C. § 1053(a)(3)(D); § 1054(c)(2)(C); § 1344; Hughes Aircraft Co. v. Jacobson, 525 U. S. 432, 435 (1999); General Building Contractors Assn., Inc. v. Pennsylvania, 458 U. S. 375, 394 (1982); United States v. Lee, 455 U. S. 252, 258 (1982). Even for pension and health benefit plans, which undeniably fall within the § 507(a)(5) priority, the payments are rarely if ever voluntary in the charitable sense that Howard invokes. The mandatory nature of most workers’ compensation coverage, then, fails to establish that the payments are not contributions.
Howard’s argument that the workers’ compensation payments here do not “aris[e] from services rendered,” § 507(a)(5), is also unpersuasive. This phrase, according to Howard, does not cover payments to insurance companies because those payments are made in exchange for the services of the insurance company, not the services of the employees. The Court seems to accept that insurance payments can receive the priority, see ante, at 659, 661-662, and this is part of the statute’s necessary operation. Even if the pay *671 ments may go to the insurance company, they are predicated nonetheless on the employees’ performing services for the employer. They therefore “aris[e] from services rendered” in the same manner as do payments to a pension, health, or disability plan. From a practical standpoint, moreover, “[t]o allow the insurer to obtain its premiums through the priority would seem the surest way to provide the employees with the policy benefits to which they are entitled.” In re Saco Local Development Corp., 711 F. 2d 441, 449 (CA1 1983) (majority opinion by Breyer, J.).
II
The question that remains — and my main point of disagreement with the Court — is whether workers’ compensation insurance qualifies as an “employee benefit plan.” The answer, one would think, depends on whether workers’ compensation plans provide benefits to employees. It is clear that they do, as the employer’s contributions enable the insurer to give out substantial payments to employees.
Even assuming that the benefit the employer provides must be a net benefit, this condition is easily satisfied. It is true that, in return for receiving workers’ compensation, employees give up some of the common-law tort remedies they otherwise could have pursued. See ante, at 662-663. The common-law remedies, though, typically required the employer to be at fault; and they were further limited by the defenses of contributory negligence, assumption of risk, and the fellow-servant doctrine. See 1 A. Larson & L. Larson, Workers’ Compensation Law § 2.03 (2005). As a result, only a small percentage of injured workers received any recovery. Ibid. Workers’ compensation plans, even considering the tort claims relinquished, thus are generally a benefit to employees. See id., §2.03, at 2-6 (noting the “helplessness which characterized the position of the injured worker of the precompensation era”). Even where an employee might have received greater damages in a tort suit, the greater *672 speed and certainty of payment in workers’ compensation is often worth the tradeoff. In many States, moreover, the employee has a choice to opt out of the workers’ compensation system, leaving him or her with traditional tort remedies. See, e. g., Ariz. Rev. Stat. Ann. § 23-906 (West 1995); Cal. Lab. Code Ann. § 4154 (West 2003); Ky. Rev. Stat. Ann. §342.395 (West 2005); Mass. Gen. Laws, ch. 152, §24 (West 2004); N. D. Cent. Code Ann. §65-07.1-03 (Lexis 2003); Pa. Stat. Ann., Tit. 77, § 1402(b) (Purdon 2002); R. I. Gen. Laws § 28-29-17 (Supp. 2005). When the employee chooses workers’ compensation, it plainly should be considered a benefit. For these reasons, workers’ compensation plans, on the whole, are a benefit to employees; and indeed, the Court does not suggest otherwise.
Instead, the Court holds that workers’ compensation is not an “employee benefit plan” largely because it also benefits employers. Ante, at 663. The text of the statute does not refer to whether the plan benefits employers, nor would it make sense to do so. Since the goal of the priority is to protect the benefits of employees, there is little reason to suppose that employees should lose that protection based on the additional fact that employers may gain something as well. Employers rarely make large payments to employee funds out of altruism, and surely the Court should not hold that employee benefits provide no benefit to the employer. In the case of health benefits, for example, the employer may receive tax breaks, good will, a healthy work force, and the leverage to pay lower wages. Workers’ compensation cannot be distinguished on this basis from pension, health, or disability plans, all of which the Court recognizes as covered by the priority.
The Court’s three other bases for treating workers’ compensation differently also find no support in the Bankruptcy Code. First, the Court maintains, based on the purpose and structure of the “employee benefit plan” priority in relation to the wage priority of § 507(a)(4), that only wage substitutes *673 are covered. Ante, at 657-660. Even assuming this proposition were correct, it would not lead to the Court’s conclusion. That is because workers’ compensation plans, as a matter of economic realities, are wage substitutes. The Court made this precise point in one of the first cases addressing a workers’ compensation scheme: “[J]ust as the employee’s assumption of ordinary risks at common law presumably was taken into account in fixing the rate of wages, so the fixed responsibility of the employer, and the modified assumption of risk by the employee under the new system, presumably will be reflected in the wage scale.” New York Central R. Co. v. White, 243 U. S. 188, 201-202 (1917). Recent empirical studies confirm that employers pass on the cost of workers’ compensation to employees in the form of lower wages. See Fishback & Kantor, Did Workers Pay for the Passage of Workers’ Compensation Laws? 110 Q. J. Econ. 713 (1995); Gruber & Krueger, The Incidence of Mandated Employer-Provided Insurance: Lessons from Workers’ Compensation Insurance, 5 Tax Policy and the Economy 111 (D. Bradford ed. 1991); Viscusi & Moore, Workers’ Compensation: Wage Effects, Benefit Inadequacies, and the Value of Health Losses, 69 Rev. Econ. & Statistics 249 (1987).
Second, the mandatory nature of most workers’ compensation plans does not change the applicability of the priority. The benefit to employees is real and significant regardless of whether the government has mandated the benefit. While States generally “prescribe and regulate” workers’ compensation and leave other benefits “to private ordering,” ante, at 665, the presence of bargaining has no bearing on whether contributions should receive priority. See Saco, supra, at 448-449. Indeed, it is difficult to imagine that if States began to mandate other kinds of benefits, those benefits would promptly fall outside § 507(a)(5). This would amount to saying that whenever some form of protection for employees comes to be accepted as so necessary for their welfare *674 that it is mandated as an employer responsibility it is no longer a benefit.
While the Court says the general practice among the States of making workers’ compensation mandatory is just one factor in the analysis, ante, at 665, presumably the Court does not suggest that an optional workers’ compensation scheme is an “employee benefit plan” simply because other States have mandatory schemes. Assuming, then, that a given optional workers’ compensation scheme might receive the priority, the Court’s approach will create uncertainty about application of the priority to the relevant payments. Only a few States have wholly permissive regimes, see, e. g., Tex. Lab. Code Ann. §406.002 (West 2006), but many more offer exemptions for particular kinds of employers, see, e. g., Tenn. Code Ann. §50-6-106(5) (2005); Mich. Comp. Laws §418.118(2) (1979). Not only will application of the priority depend on varying state laws, but also multistate workers’ compensation plans may have to be segmented for purposes of determining bankruptcy priorities. There is nothing in § 507(a)(5) to suggest an intent to cause this kind of disuniformity.
Third, the existence of state funds to compensate employees when their employers fail to provide workers’ compensation benefits has little relevance. Once again, it is unclear how much weight the Court places on this factor, and it seems doubtful that the Court would remove health plans from the priority simply because a State created a fallback public health system. In any event state fallback funds do not change the fact that the employer is providing a benefit; a fallback fund simply indicates the employee could have received the benefit from somewhere else. Were it otherwise, pension plans would also fall outside the priority, since it appears they must provide benefits even if the employer has defaulted on its contributions. See Central States, Southeast & Southwest Areas Pension Fund v. Central Transport, Inc., 472 U. S. 559, 567, n. 7 (1985) (citing Department of *675 Labor advisory opinion). As a practical matter, moreover, most large multiemployer plans effectively guarantee compensation (unless all the employers happen to go bankrupt at the same time), and the Pension Benefit Guaranty Corporation ensures payment of at least some of the promised benefits. The exclusion of these plans from the priority, however, would accord with neither the text of the provision nor the commonsense notion that protecting the insurer— whether it be a private company, a multiemployer plan, or a government fund — is the best way to protect the employees. See Saco, 711 F. 2d, at 449. Simply put, harm to the insurer will be passed along to the employees, either by rendering the insurer unable to pay or causing it to charge higher rates for the same coverage.
Finally, even if the language of § 507(a)(5) were ambiguous, the definition of “employee benefit plan” in the Employee Retirement Income Security Act of 1974 (ERISA), 88 Stat. 829, as amended, 29 U. S. C. § 1001 et seq. (2000 ed. and Supp. Ill), would lend considerable support to respondent’s view. ERISA defines “employee benefit plan” as including an “employee welfare benefit plan,” §1002(3), which in turn “mean[s] any plan, fund, or program which . . . was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise,... benefits in the event of sickness, accident, disability, death or unemployment,” § 1002(1). The definition of a term in one statute does not necessarily control the interpretation of that term in another statute, for where the purposes or contexts are different the terms may take on different meanings. See United States v. Reorganized CF&I Fabricators of Utah, Inc., 518 U. S. 213, 219-224 (1996). Where no conflicting purpose or context is apparent, though, other statutes may provide at least some evidence of Congress’ understanding. See Securities Industry Assn. v. Board of Governors, FRS, 468 U. S. 137, 150-151 (1984); see also ante, at 661-662.
*676 The ERISA definition is of particular relevance here given that “employee benefit plan” is not a generic phrase but something closer to a term of art, with a meaning that seems unlikely to change based on statutory context. Also, neither Howard nor the Court cites any source for a definition of “employee benefit plan” that would exclude workers’ compensation. The Court attempts to minimize the significance of the ERISA definition by noting that ERISA exempts from its coverage any plan “maintained solely for the purpose of complying with applicable workmen’s compensation laws.” § 1003(b)(3); see ante, at 661-662. Congress exempted these plans from coverage, but it did not exclude them from its definition, and this is the relevant consideration. Indeed, the language of the exclusion confirms that workers’ compensation is an employee benefit plan. See § 1003(b) (“The provisions of this subchapter shall not apply to any employee benefit plan if... such plan is maintained solely for the purpose of complying with applicable workmen’s compensation laws”). The exemption also belies the Court’s position because it shows that mandatory workers’ compensation plans were not included in the definition for any purpose particular to ERISA. Instead, since they were exempted from coverage, the most plausible reason for their inclusion (only to be then excluded) is that Congress was simply giving the ordinary definition of the term. There is no indication in § 507(a)(5) that Congress chose to depart from that ordinary definition. By contrast, when Congress wanted a particular provision of the Bankruptcy Code to narrow the ordinary definition to exclude mandatory workers’ compensation, it did so expressly by referring to those plans covered by ERISA. See 11 U. S. C. § 541(b)(7).
An “employee benefit plan,” whether viewed as a term of art or in accordance with its plain meaning, includes workers’ compensation. These are the reasons for my respectful dissent.