**In re CREATIVE RESTAURANT MANAGEMENT, INC., Creative Restaurant Operating Company, CRM of Kansas, Inc., Fred P. Ott's, Inc., Fred P. Ott's of Kansas, Inc., Debtors.**

**Bankruptcy Nos. 92–40743 to 92–40747.**

United States Bankruptcy Court, W.D. Missouri.

May 20, 1992.

---

174

Paul Hoffman, Smith, Gill, Fisher & Butts, Kansas City, Mo., for debtors.

Mark Geisler, N.L.R.B., Washington, D.C., for creditors.

James Bird, Polsinelli, White, Vardeman & Shalton, P.C., Kansas City, Mo., for Haddad Restaurant Group, Inc.

## MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Bankruptcy Judge.

The issue dealt with in this Memorandum Opinion is the extent to which a Bankruptcy Court can authorize an asset sale free and clear of remedies sought by the National Labor Relations Board ("the NLRB"). This is a core proceeding under 28 U.S.C. § 157(b)(2)(N) over which this Court has jurisdiction pursuant to 28 U.S.C. § 1334. This opinion supplements the Order Confirming Debtors' Amended and Restated Plan of Reorganization, which order was filed May 9, 1992.

Creative Restaurant Operating Company ("CROC") is one of five debtors which operate sixteen (16) restaurants located in five (5) states and the District of Columbia. One of the restaurants operated by CROC is Hogate's, located in Washington D.C. On February 6, 1991, prior to the filing of these bankruptcy proceedings, a regional office of the NLRB conducted an election in which the majority of the employees of Hogate's voted against selection of the Hotel and Restaurant Employees, Local 25, ("the Union") as their collective bargaining representative. On May 31, 1991, pursuant to objections to the election and unfair labor practice charges filed by the Union, the regional office filed a Consolidated Complaint ("the Complaint") with the NLRB alleging that CROC interfered with, restrained and coerced employees in violation of 29 U.S.C. § 158(a)(1). The Complaint further alleged that CROC unlawfully discriminated against its employees by adversely affecting their employment conditions in order to discourage Union membership, in violation of 29 U.S.C. § 158(a)(3). In addition, the Complaint alleged that CROC discriminated against its employees for filing unfair labor practice charges or for giving testimony in the NLRB investigation, all in violation of 29 U.S.C. § 158(a)(4). The alleged unfair labor practices involve four (4) discharged employees, who, the Complaint asserts, should be reinstated. In addition, the Complaint asserts a back pay claim for the period of time that the employees have not been reinstated.

The NLRB has filed a claim for $52,261.49, plus interest of $3,593.88, for a total of $55,855.37. It is the NLRB's position that in the event a violation is shown, such back pay liability continues to accrue so long as CROC does not offer to reinstate the affected employees.

In addition to reinstatement and back pay, counsel for the NLRB contends that, if violations are found, the Union is entitled to a re-run election. The NLRB regional office seeks other remedies as well, including the posting of a notice of violations at Hogate's, and the expungement of certain information from records of affected employees. The NLRB proceeding is still pending trial as of the date of this Memorandum Opinion.

On March 6, 1992, CROC and the four related companies filed Chapter 11 petitions in this Court. That Chapter 11 filing was precipitated by the debtors' overleveraged financial structure, and not by the NLRB proceeding. On March 9, 1992, the debtors filed a joint Plan of Reorganization, which reflected a workout that had been arranged with the debtors' primary secured lender prior to the filing of the Chapter 11 cases. The Plan was amended prior to the Confirmation Hearing, which was held on May 7, 1992. Three objections to confirmation were filed, one of which was by the NLRB. The NLRB objection presumes that some or all of the relief sought by the regional office will be ordered by the NLRB itself. The other two objections, which did not relate to labor issues, were either withdrawn at the Confirmation Hearing or were satisfied by further modifications to the Plan. Therefore, at the conclusion of the Confirmation Hearing, the only remaining objection was that filed by the NLRB. The Court announced at the hearing that it would sustain, in part, the NLRB's objections, and directed that certain additional modifications be made in the Plan, as will be described. I further found that the Plan had been filed in good faith, and that all the requirements for confirmation had been met. *See* 11 U.S.C. § 1129. The order confirming the

amended and modified Plan was filed on May 9, 1992.

The Plan of Reorganization, as confirmed, provides for the sale of virtually all of the debtors' assets to Haddad Restaurant Group, Inc. ("HRG"), a Kansas Corporation, or its assigns. Pursuant to the agreement between the debtors and HRG, such sale is to be "free and clear of all liens and encumbrances, whether known or unknown...." Asset Purchase Agreement, Appendix 42 to Second Amended and Restated Disclosure Statement for Amended and Restated Joint Plan of Reorganization, dated April 10, 1992, ¶ 1.08(ii). According to counsel, it is intended that this provision immunize HRG from all of the remedies asserted by the NLRB.

■■■ The Plan does not specify the source of this Court's authority to immunize a buyer in the manner proposed. Section 105(a) of the Bankruptcy Code authorizes the Court to "issue any order ... necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). The reach of section 105 is, however, not unlimited. A bankruptcy court may only exercise its powers in a manner which is consistent with the provisions of the Code. *Johnson v. First Nat'l Bank of Montevideo,* 719 F.2d 270, 273 (8th Cir.1983), *cert. denied,* 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984); *In re Ozark Restaurant Equip. Co., Inc.,* 816 F.2d 1222, 1230 (8th Cir.1987); *see also In re NWFX, Inc.,* 864 F.2d 593, 595 (8th Cir.1989) ("Section 105 does not empower a bankruptcy court to create new substantive rights."). There is a section of the Code which deals specifically with sales of property free and clear. Therefore, the provisions of that section, and not section 105, define the court's authority.

Section 363(f) of the Bankruptcy Code provides as follows:

11 U.S.C. § 363. *Use, Sale, or lease of property.*

   *    *    *    *    *    *

(f) The trustee [1] may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). The issue here is whether this Court can authorize the buyer, HRG, to purchase the debtors' assets free and clear of liability for the remedies sought by the NLRB.

The National Labor Relations Act authorizes the NLRB to enforce such Act, and to fashion appropriate remedies for unfair labor practices. 29 U.S.C. § 160(a), (c); *see Nathanson v. NLRB,* 344 U.S. 25, 73 S.Ct. 80, 97 L.Ed. 23 (1952). The Supreme Court has determined that, pursuant to such authority, the NLRB can, under certain circumstances, impose "successor liability" on the purchaser of a business in order to enforce remedial orders involving labor disputes. *See Howard Johnson Co., Inc. v. Detroit Local Joint Executive Board, Hotel and Restaurant Employees and Bartenders Int'l Union, AFL-CIO,* 417 U.S. 249, 94 S.Ct. 2236, 41 L.Ed.2d 46 (1974); *Golden State Bottling Co., Inc. v. NLRB,* 414 U.S. 168, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973); *NLRB v. Burns Int'l Sec. Servs., Inc.,* 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972).[2] Under these cases, and absent

---

**1.** For these purposes, a debtor-in-possession has all the rights and powers of a bankruptcy trustee. *See* 11 U.S.C. § 1107.

**2.** The National Labor Relations Act does not specifically refer to the successor liability doctrine; however, courts have approved of the NLRB's assertion of the doctrine as a means of insuring compliance with the purposes of the Act.

a bankruptcy proceeding, the NLRB is authorized to impose successor liability on the purchaser of a business where there is a "substantial continuity of identity in the business enterprise" across the change in ownership, *see Howard Johnson,* 417 U.S. at 263, 94 S.Ct. at 2244 (necessarily includes a substantial continuity in the identity of the work force before and after the change in ownership), and the successor employer had notice of the alleged unfair labor practices at the time it purchased the business enterprise. *See Golden State,* 414 U.S. at 185, 94 S.Ct. at 425 (successor must have notice before liability can be imposed); *see also Fall River Dyeing & Finishing Corp. v. NLRB,* 482 U.S. 27, 43, 107 S.Ct. 2225, 2236, 96 L.Ed.2d 22 (1987) (focus is on whether there is "substantial continuity" between the enterprises).

The purpose of section 363(f) of the Bankruptcy Code is to enable a debtor to liquidate its assets without adversely affecting the rights of creditors. In a typical case, a debtor and creditor may disagree as to whether a creditor has a valid lien on certain assets, or the amount owed. While that dispute is being resolved, though, there may be an offer to purchase the underlying property. The purchaser requires clear title. The purported lienholder requires that its lien, if any, be protected. Section 363(f) allows the property to be sold free and clear of the lien, with any valid lien to attach only to the proceeds being received by the debtor. Once the property is sold, the parties can litigate to conclusion the question of whether the creditor had a valid lien on the property sold, and the amount owed. At that point, the creditor is allowed to look only to the sale proceeds, and not to the purchaser, for satisfaction of its claim. *See Forde v. Kee-Lox Mfg. Co., Inc.,* 437 F.Supp. 631 (W.D.N.Y.1977), *aff'd,* 584 F.2d 4 (2d Cir. 1978). In this way, the interest of the lienholder is preserved, while at the same time allowing the debtor to dispose of its property for the benefit of itself and all its creditors.

■ The application of section 363(f) is not limited to lienholders. *See In re Rose,* 113 B.R. 534 (W.D.Mo.1990). Instead, that provision allows sales free and clear of any interests, be they liens or otherwise. Thus, to the extent a party has an interest in property of the estate, such property can be sold free and clear of that interest, provided the party is given the same rights in the sales proceeds as it would have had in the property sold. *See* 2 Lawrence P. King et al., *Collier on Bankruptcy* ¶ 363.-07, at 363–33 (15th ed. 1992). The term "interest" is not defined in the Code. However, a creditor, even an unsecured one, has an interest in property of the debtor. Absent bankruptcy, that creditor could obtain a judgment and execute against property of the debtor. Such execution would of course be subject to prior liens on such property. But the right to look to estate property for satisfaction of the debt creates an interest in property within the meaning of section 363(f).

Bankruptcy Courts have often expressed a concern that imposition of successor liability claims on those who purchase from a debtor would have a negative, or chilling effect on such sales. In that way, the goal of achieving maximum return to all creditors would be more difficult to achieve. *See In re New England Fish Co.,* 19 B.R. 323 (Bankr.W.D.Wash.1982). At the same time, the NLRB has an interest in insuring that its enforcement goals are achieved. Fortunately, section 363(f) of the Code accommodates both these goals, as will be shown.

■ In interpreting section 363(f), the first issue is which, if any, of the remedies sought in the NLRB Complaint constitutes an interest. Next, the court must determine if any of the five enumerated conditions under 363(f) has been met as to such interest. If so, property of the estate can be sold free and clear of such interest, with the NLRB, just as any other creditor, being required to look only to the proceeds of the sale for satisfaction. However, to the extent a remedy does not create such an interest, or does not meet one of the conditions, the sale free and clear does not immunize the buyer from such remedy.

Although the term "interest" is not defined, the term "claim" is defined in the Bankruptcy Code. And, as stated, a holder of a claim against the debtor has an interest in property of the debtor. A claim is defined as follows:

11 U.S.C. Section 101. *Definition*
In this Title—

 \*  \*  \*  \*  \*  \*

(5) "Claim" means—
(a) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
(b) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured. . . .

11 U.S.C. § 101(5).

Obviously, any back pay claim in favor of the NLRB creates a right to payment, which is therefore an interest in property of the estate. The same is true for any reinstatement claim. Reinstatement is an equitable remedy. It is the NLRB's position that the affected employees should be reinstated, and that, as each day passes in which they are not so reinstated, they should receive back pay. Therefore, the twin remedies of reinstatement and back pay are rights to payment which give the NLRB an interest in property of CROC.

The same is not true, however, for the remaining remedies sought by the NLRB. These include, most importantly, the assertion that a re-run election is required. If a re-run election were ordered, that in and of itself would not give rise to a right of payment, nor would it give the NLRB an interest in the debtors' property. Therefore, the debtors' sale of property is not free and clear of the NLRB's assertion that a re-run election might be required. Such holding does not necessarily mean that there were defects in the prior elec-

tion, nor does it mean that successor liability as to any re-run election will attach to HRG. Those are issues for the NLRB to decide. I simply find that the sale free and clear does not immunize the buyer from any responsibility to conduct a re-run election, if such buyer would have had such responsibility absent a bankruptcy proceeding.

I make the same finding with respect to the assertions that the purchaser should be required to expunge employee records, and to post certain notices concerning past violations. In the event those remedies are ordered by the NLRB, and successor liability is found, such liability is not affected by the sale of debtors' assets free and clear of liens and interests.

Thus, I find that any claim which might be asserted by the NLRB for back pay or reinstatement does constitute an interest within the meaning of section 363(f). That does not, however, end the inquiry as to those remedies. In order for the debtors to be permitted to sell property free and clear of the interests of the NLRB, the debtors must also show that at least one of the five conditions of section 363(f) is met.

Under section 363(f)(4), a Chapter 11 debtor is permitted to sell property of the estate free and clear of an interest in such property if such interest is subject to a bona fide dispute. In this case, the back pay and reinstatement claims are interests that are in bona fide dispute, i.e., the claims are the subject of an NLRB proceeding, and it is unclear which party will prevail. *See In re Olympia Holding Corp.*, 129 B.R. 679 (Bankr.M.D.Fla.1991) (dispute in adversary proceeding to determine whether interest holder was an owner-lessor or secured creditor). Thus, at least one of the conditions under section 363(f), specifically section 363(f)(4), is satisfied in this case, and debtors may sell the assets of the estate free and clear of the NLRB's back pay and reinstatement claims.

In addition, section 363(f)(5) provides that a sale free and clear of an interest in property is proper where the holder of the interest "could be compelled, in a legal or equitable proceeding, to accept a money

satisfaction of such interest." 11 U.S.C. § 363(f)(5). Here, the NLRB seeks a money satisfaction, that being back pay, for each day that the employees are not reinstated. Therefore, this condition is satisfied as well as to the back pay and reinstatement claims.

For these reasons, the debtors are authorized to sell assets to HRG free and clear of claims asserted by the NLRB for reinstatement and back pay. Such sale is not free and clear of the remedies of requiring a re-run election, the expungement of employee records, or the posting of notices. In the event of any inconsistency between this Memorandum Opinion and the confirmation order, the provisions of the confirmation order will control.