**NATIONAL LABOR RELATIONS BOARD, Petitioner–Appellee,**

**v.**

**E.D.P. MEDICAL COMPUTER SYSTEMS, INC., Respondent– Appellant,**

Consumer Subscription Center, Inc., Consumers Subscription Service, Inc., EDP Hospital Computer Systems, Inc., As the alter ego of Consumers Subscription Service, Inc., Respondents.

No. 1762, Docket 93–6089.

United States Court of Appeals, Second Circuit.

Argued June 9, 1993.

Decided Oct. 8, 1993.

952

Norman Kaplan, Great Neck, NY, for respondent-appellant.

William Mascioli, Washington DC (William Wachter and Gary Shinners, N.L.R.B.), for petitioner-appellee.

Before: OAKES, WALKER and WOOD, Jr.,* Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge:

The National Labor Relations Board ("Board"), pursuant to the Federal Debt Collection Procedure Act of 1990 ("FDCPA"), 28 U.S.C. § 3001–3308, applied for a prejudgment writ of garnishment in the Eastern District of New York. The Board sought to garnish funds owed by Bronx–Lebanon Hospital to EDP Hospital Computer Systems, Inc. ("EDP HOSPITAL") and EDP Medical Computer Systems, Inc. ("EDP MEDICAL") as payment for services already rendered. The district court granted the Board's application and ordered the writ. The respondents moved to vacate the writ. The court denied their motion, and the respondents' appeal followed. We affirm.

* Harlington Wood, Jr., Senior Circuit Judge of the U.S. Court of Appeals for the Seventh Circuit, sitting by designation.

## I. BACKGROUND

The parties to this appeal have a long history with one another. In brief, however, the Board found that EDP Medical had committed unfair labor practices in violation of the National Labor Relations Act, 29 U.S.C. § 151 *et seq.*, in a decision and order which was enforced by this court on October 22, 1987.

The Board found in a second decision and order that EDP Medical owes approximately $130,000 plus interest in backpay for the unfair labor practices. The Court of Appeals for the District of Columbia Circuit enforced this order on April 9, 1992. EDP Medical has not paid the backpay award.

On November 24, 1992, the Board brought civil contempt proceedings against EDP Medical and EDP Hospital in the District of Columbia Circuit because of their failure to respond to the court's enforcement order. EDP Hospital was named in contempt because it is alleged to be an alter ego under the National Labor Relations Act of EDP Medical. Meanwhile, EDP Medical filed for bankruptcy in the Middle District of Pennsylvania on December 2, 1992. Because of the bankruptcy petition, the District of Columbia Circuit in an order dated February 19, 1993, stayed the contempt proceedings against EDP Medical pending the outcome of that petition. The court also remanded the question of whether EDP Hospital is an alter ego of EDP Medical to the Board for supplemental proceedings.

On November 30, 1992, the Board made an *ex parte* application for a prejudgment writ of garnishment under the FDCPA, 28 U.S.C. § 3104, in the Eastern District of New York. The Board sought to garnish money, approximately $140,000, owed to EDP Medical's alleged alter ego, EDP Hospital, by Bronx–Lebanon Hospital. The Board alleged that EDP Hospital was created to take EDP Medical's place and avoid the obligations of EDP Medical. The Board alleged that any income received by either EDP Medical or EDP Hospital was at risk of being assigned, disposed of, concealed, ill treated, wasted, or destroyed, instead of being used to satisfy the backpay award.

The court granted the application on December 15, 1992, and issued a prejudgment writ and summons of garnishment. The Board served the respondents with notice of the writ on January 4, 1993, by certified mail. On January 8, 1993, the respondents requested a hearing to quash the court's order.

At the hearing held on February 24, 1993, the parties argued the merits of the writ. The court stated that the only factual issue "about which reasonable people may differ" is whether EDP Hospital which was owed money by Bronx–Lebanon Hospital was an alter ego of EDP Medical which owed the Board the backpay award. The court then invited the parties to present any evidence concerning that issue, although stating that the record so far favored the Board. Counsel for the respondents offered to testify about a conversation which he alleges did not take place as claimed by the Board, but neither party offered other evidence in light of the court's indication of its finding. The court then stated that evidence about the conversation in which counsel for the respondents allegedly threatened to put EDP Hospital in bankruptcy and set up another alter ego company to prevent any tracing of EDP Medical's liability was not necessary for ruling on the writ.

The court issued an order on March 10, 1993, in which it denied the respondents' motion to vacate the writ.

## II. ANALYSIS

The respondents raise several issues which they argue mandate a reversal of the district court's order. First they argue the FDCPA does not apply in this case because the Board cannot use the Act to recover backpay awards. Next they claim the Act is unconstitutional because they were not given notice and an opportunity to be heard before the writ was ordered. They then argue certain procedural requirements of the Act were not satisfied. Finally they claim the proceedings should have been automatically stayed because of the bankruptcy petition.

### A. *Jurisdiction*

 Our first consideration is whether we have jurisdiction over the appeal, even

954

though neither party contests it. Ordinarily, a provisional remedy is only part of a case which remains before the court. Thus any order denying a motion to vacate the provisional remedy is not appealable until the resolution of the merits of the underlying case. *See Swift & Co. Packers v. Compania Colombiana del Caribe, S.A.*, 339 U.S. 684, 689, 70 S.Ct. 861, 865, 94 L.Ed. 1206 (1950) (dictum) (order dissolving prejudgment attachment appealable while order upholding attachment would not be); *H & S Plumbing Supplies, Inc. v. BancAmerica Commercial Corp.*, 830 F.2d 4, 6 (2d Cir.1987) (denial of motion to vacate a prejudgment attachment not appealable); *West v. Zurhorst*, 425 F.2d 919, 921 (2d Cir.1970); 11 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2936 (1973 & Supp.1993). After the court denied the motion in this case, however, there was nothing left of the litigation in the district court. The ultimate issue whether EDP Hospital is liable for EDP Medical's debts will be decided by the District of Columbia Circuit after the Board's supplemental proceedings. Therefore, we are satisfied that the order appealed from is a final decision in the case, and we have jurisdiction under 28 U.S.C. § 1291.

### B. *The FDCPA*

■ The FDCPA allows the United States to recover a judgment on a debt owed to it or to obtain a remedy in connection with such a claim before judgment on the debt. 28 U.S.C. § 3001(a). A debt under the Act means "an amount that is owing to the United States on account of a direct loan," *id.* § 3002(3)(A), or on account of a "fee, duty, lease, rent, service, sale of real or personal property, overpayment, fine, assessment, penalty, restitution, damages, interest, tax, bail bond, or other source of indebtedness to the United States." *Id.* § 3002(3)(B). The purpose of the Act was "to create a comprehensive statutory framework for the collection of debts owed to the United States government," in order to "improve the efficiency and speed in collecting those debts." H.R.Rep. No. 736, 101st Cong., 2d Sess. (1990), *reprinted in,* 1990 U.S.C.C.A.N. 6472, 6630, 6631. Previously the United States collected debts according to the laws of the

different states which impeded collection efforts. *Id.* at 6631–33.

The respondents argue the Board may not use the FDCPA to collect the backpay award because it is not a debt owing to the United States under 28 U.S.C. § 3002(3)(A) & (B). Even though the Board is the only party entitled to enforce the backpay award, the respondents argue that since the money will go to the individual employees, it is not a debt due to the United States.

The Board, however, maintains that the collection of the backpay award is not simply done for the private interests of the individual employees, but rather also for the overall public interest in enforcing the National Labor Relations Act and preventing unfair labor practices. The FDCPA should apply, therefore, to awards being collected by the United States under federal labor law. Specifically, the backpay award should be considered "restitution, damages, ... [or] reimbursement" owing to the United States.

We agree with the district court that the FDCPA applies in this action because the backpay award constitutes a debt owing to the United States. Both parties rely upon the legislative history of the Act in support for their positions. The record, however, does not clearly support either side. The purpose of the Act was to facilitate and improve the federal government's collection efforts which in turn will lessen "the effect of delinquent debts on the massive federal budget deficit now undermining the economic well-being of the Nation." H.R.Rep. No. 736, *supra, reprinted in,* 1990 U.S.C.C.A.N. at 6631. The definition for debt is "defined broadly to include amounts owing to the United States on account of a direct loan or loan insured or guaranteed by the United States as well as other amounts originally due the United States." H.R.Rep. No. 736, *supra, reprinted in,* 1990 U.S.C.C.A.N. at 6636. Congressman Brooks said on the floor of the House:

> [t]he definition of "debt" was carefully written to make clear that the Act will not apply to obligations which began as purely private loan or contract obligations. For example, if one of our constituents goes to

his neighborhood bank or thrift and takes out a business or personal loan, that transaction is between him and the bank or thrift.... even if the bank or thrift later fails and is taken over by federal regulators. If the federal government seeks to recover these loan or contract obligations, ... it is not eligible to use the new procedures in this Act.

136 Cong.Rec. H13288 (daily ed. Oct. 27, 1990). The question remains whether a backpay award sought by the Board constitutes a debt to the United States or some obligation which is "purely private."

The Supreme Court has long recognized that the Board is "a public agency acting in the public interest, not any private person or group, not any employee or group of employees" when it grants appropriate relief for unfair labor practices. *Amalgamated Utility Workers v. Consolidated Edison Co.,* 309 U.S. 261, 265, 60 S.Ct. 561, 563, 84 L.Ed. 738 (1940). The Board is the only entity allowed to enforce the relief ordered, and it "seeks enforcement as a public agent, not to give effect to a 'private administrative remedy.'" *Id.* at 269, 60 S.Ct. at 565. *See Vaca v. Sipes,* 386 U.S. 171, 182–83 n. 8, 87 S.Ct. 903, 912–13 n. 8, 17 L.Ed.2d 842 (1967) ("The public interest in effectuating the policies of the federal labor laws, not the wrong done the individual employee, is always the Board's principal concern in fashioning unfair labor practice remedies.")

It is precisely because the Board acts in the public's interest and not those of private individuals that persuades us that the backpay award sought by the Board may be considered a debt to the United States under the FDCPA. The Board serves as more than a mere conduit when it initiates an action to collect a backpay award. *See National Licorice Co. v. N.L.R.B.,* 309 U.S. 350, 362, 60 S.Ct. 569, 576, 84 L.Ed. 799 (1940). Effective debt collection by the government is not only to fill the public coffers and lower the federal budget deficit; we should also consider the importance of effective collection as a necessary tool for enforcement of the federal labor laws.

Both parties rely heavily upon *Nathanson v. N.L.R.B.,* 344 U.S. 25, 73 S.Ct. 80, 97 L.Ed. 23 (1952). In *Nathanson,* the Supreme Court held the Board's backpay claim against a bankrupt company was not entitled to priority in bankruptcy because it was not a debt due the United States within the meaning of the Bankruptcy Act. The Court reasoned that the priority granted by the Bankruptcy Act was "'to secure an adequate revenue to sustain the public burthens and discharge the public debts.'" *Id.* at 27–28, 73 S.Ct. at 82 (citation omitted). Any money obtained for the backpay award would go to private persons, not the government.

Significantly, however, the Court did hold that the Board is a creditor because the backpay order is a "'debt, demand, or claim provable in bankruptcy.'" *Id.* at 27 n. 1, 73 S.Ct. at 82 n. 1 (quoting the Bankruptcy Act 11 U.S.C. § 1(11)). The Court stated that the Board is the only party entitled to enforce the award, as designated by Congress. *Id.* at 27, 73 S.Ct. at 27. The Court's reasons for not granting the Board the same priority as other debts owing to the United States are different from the Court's reasons for holding that a backpay award is a debt to the Board. It is for precisely this difference that *Nathanson* does not help the respondents while it does lend support for our decision that a backpay award is a debt owing to the United States under the FDCPA.

### C. *The Due Process Given by the FDCPA*

◼ The respondents argue the issuance of the writ violated their due process rights because they were not provided with notice and an opportunity to be heard prior to the issuance of the writ. They do not contest the constitutionality of any other FDCPA procedures.

The FDCPA mandates that notice be given, 28 U.S.C. § 3101(d)(1), and a hearing be held if requested "at any time before judgment on the claim for a debt." *Id.* § 3101(d)(2). The writ was ordered December 15, 1992, and the respondents were not given notice until January 4, 1993, at which time they promptly requested a hearing and moved to quash the order. We do not find the respondents' due process rights were violated.

■ The respondents suffered a "deprivation of property" implicating their constitutional due process rights when the writ was issued because they are denied the use of the $140,000. *See United States v. Monsanto,* 924 F.2d 1186, 1192 (2d Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 382, 116 L.Ed.2d 333 (1991). Due process generally requires that notice and an opportunity to be heard occur prior to the deprivation of any property interest. *Id.* at 1192. Due process, however, " 'unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place, and circumstance.' " *Connecticut v. Doehr,* — U.S. —, —, 111 S.Ct. 2105, 2112, 115 L.Ed.2d 1 (1991) (quoting *Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976)). Therefore, we need determine only whether the FDCPA's prejudgment writ of garnishment used against the respondents gave them adequate due process protection. *See Shaumyan v. O'Neill,* 987 F.2d 122, 126 (2d Cir.1993).

"Only in 'extraordinary situations' may notice and a hearing be postponed until after the deprivation." *Monsanto,* 924 F.2d at 1192. *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 339, 89 S.Ct. 1820, 1821, 23 L.Ed.2d 349 (1969). The FDCPA allows for prejudgment remedies only in " 'compelling' circumstances." H.R.Rep. No. 736, 101st Cong., 2d Sess. (1990), *reprinted in,* 1990 U.S.C.C.A.N. 6630, 6635. To obtain this remedy, the United States must show there is reasonable cause to believe the debtor is about to prevent the United States from recovering its debt by fleeing the jurisdiction, disposing of assets, or evading service of process. 28 U.S.C. § 3101(b). We believe these exigent circumstances are "extraordinary situations" which warrant an *ex parte* application for a prejudgment garnishment. *See Doehr,* — U.S. at — – —, 111 S.Ct. at 2115–16; *Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 608–09, 94 S.Ct. 1895, 1900–01, 40 L.Ed.2d 406 (1974); *United States v. Property at 4492 S. Livonia Rd.,* 889 F.2d 1258, 1265 (2d Cir.1989).

The Board alleged in its application that EDP Hospital was created in order to avoid EDP Medical's obligations because it took over EDP Medical's business without any interruption or change in business. When EDP Medical stopped operating, its employees and customer Bronx–Lebanon Hospital did not even know a transfer had occurred. EDP Medical has consistently sought to avoid voluntarily paying the backpay award enforced by the District of Columbia Circuit. The Board petitioned to find EDP Medical in contempt, though that proceeding is stayed since EDP Medical is now seeking bankruptcy. Because the only known asset of EDP Hospital is the $140,000 payment owed by Bronx–Lebanon Hospital, the Board alleged there was reasonable cause to believe its enforcement efforts were significantly at risk if the money was not garnished immediately.

We have no reason to find that the Board did not offer sufficient, adequate evidence to the district court to justify the prejudgment garnishment. Furthermore, when the respondents had the hearing mandated by the FDCPA, they failed to contradict any of the Board's allegations. They did not present evidence disproving that EDP Hospital was an alter ego of EDP Medical. Thus even if the hearing had been held prior to the issuance of the writ, it would not have given any greater protection to respondents' interest in the money. *See Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). Respondents did apparently convince the judge that the alleged telephone conversation in which their counsel threatened to evade the Board's reach again by creating another corporation did not take place as the Board alleged. Nevertheless, the other allegations made by the Board adequately demonstrated the real possibility of EDP Hospital disposing of its only known asset before any prejudgment remedy could be executed if given notice beforehand.

### D. *Requirements of the FDCPA*

■ Respondents argue the Board did not show "reasonable cause to believe" a prejudgment remedy was warranted under the FDCPA. *See* 28 U.S.C. § 3101(b). Nor did the Board offer sufficient proof of the probable validity of its claim for the debt. *See id.* § 3101(d)(2). Additionally, the Board did not file "a civil action on a claim for a debt"

entitling it to apply for a prejudgment remedy. *See id.* § 3101(a). Nor did the Board properly serve the writ. *See id.* § 3004(a).

These arguments are without merit for we believe the Board satisfied its burden under the Act and properly followed the procedural requirements of the Act. In its application the Board stated: "The Board has reasonable cause to believe that the respondents-debtors will assign, dispose, remove, conceal, ill treat, waste, or destroy property with the effect of hindering, delaying, or defrauding the Board." The Board then gave specific proof and completed the application with an affidavit to the same effect.

The district court found in its March 10, 1993, order denying the motion to vacate the writ that the Board "has adequately demonstrated that a factual basis exists which justifies the need for a prejudgment remedy." We have already discussed the adequacy of the Board's reasonable cause to believe the money owed by Bronx–Lebanon Hospital was at risk of disappearing in a way that would impede the Board's collection efforts. We agree with the district court that the Board satisfied its burden to prove its need for the remedy under the FDCPA.

■ The district court also found the Board complied with the procedural requirements of the Act, and we agree. The remedy sought by the Board was in conjunction with an action on a claim for a debt within the meaning of the FDCPA. The action was the petition filed in the District of Columbia Circuit for adjudication of EDP Medical and EDP Hospital in contempt. *See United States v. Gelb,* 783 F.Supp. 748, 752 (E.D.N.Y.1991) (action to set aside real estate conveyances in attempt to satisfy fines and restitution owed by grantor is a claim for a debt or judgment for a debt under FDCPA). Service of the writ was also proper under Rule 5 of the Federal Rules of Civil Procedure. Additionally, we have carefully considered respondents' other procedural arguments that the Board failed to exhaust other administrative remedies and the value of the garnished property exceeded the limits of the FDCPA and find them to be without merit.

E. *Automatic Stay from Bankruptcy Petition*

■ Respondent's final argument concerns the effect of the bankruptcy petition on this action. They claim that all proceedings against EDP Hospital should be stayed because of the bankruptcy proceeding involving EDP Medical. Under 11 U.S.C. § 362 of the Bankruptcy Code, the civil contempt petition was stayed against EDP Medical by the District of Columbia Circuit. Therefore, the respondents argue, if EDP Hospital is an alter ego of EDP Medical for the FDCPA, it should be protected like EDP Medical by 11 U.S.C. § 362.

The Board points out that EDP Medical's bankruptcy filing does not mention EDP Hospital or its assets. If the money owed by Bronx–Lebanon Hospital to EDP Hospital was not garnished, it would also not be protected under the bankruptcy estate of EDP Medical.

Moreover, the automatic stay provision allows governmental units to enforce their police or regulatory powers, 11 U.S.C. § 362(b)(4), and permits the entry of money judgments to enforce their police or regulatory powers, *id.* § 362(b)(5). The Board acts as a governmental unit using its police or regulatory powers when it acts to enforce its orders. *N.L.R.B. v. 15th Ave. Iron Works, Inc.,* 964 F.2d 1336, 1337 (2d Cir.1992) (per curiam); *N.L.R.B. v. Continental Hagen Corp.,* 932 F.2d 828, 832–34 (9th Cir.1991). Therefore, the automatic stay provision does not apply to this proceeding. *Id.*

### III. CONCLUSION

We conclude that the backpay award the Board seeks to protect is an amount owing to the United States under the FDCPA. The Board was entitled to use the FDCPA, and it followed the requirements of the Act in order to obtain the prejudgment writ of garnishment. Respondents' constitutional rights were not violated by not having a hearing prior to the garnishment. Accordingly, we affirm the district court's order denying the motion to vacate the writ.

WALKER, Circuit Judge, dissenting:

While the record here indicates that EDP Medical has indeed engaged in reprehensible conduct towards its employees and adopted tactics designed to avoid paying the NLRB back-pay award against it, Congress never intended that the FDCPA be used other than in connection with a civil action for collection of a debt "owing to the United States." An NLRB back-pay award is not such a debt. This becomes obvious when provisions of the FDCPA are sought to be applied not to a civil action as contemplated by Congress but to the sole method for enforcing an NLRB back-pay award, a contempt proceeding in the court of appeals.

In order to reach the result it desires, the majority cites a snippet of legislative history from Congressman Brooks in which he states that the FDCPA "will not apply to obligations which begin as purely private loan or contract obligations." 136 Cong.Rec. H13288 (daily ed. October 27, 1990). From this, the majority reasons that if the obligation is not "purely private," it can be a debt "owing to the United States." Yet it seems evident from the passage quoted by the majority that Congressman Brooks was merely giving but one example of the kind of debt not covered by the FDCPA—a purely private one—and in no way meant to indicate that all non-purely private debts would be subject to the new procedures.

In any event, the Congressman's pronouncement is no substitute for the plain meaning of the statute. *See, e.g., Pennsylvania Dep't of Pub. Welfare v. Davenport,* 495 U.S. 552, 557–58, 110 S.Ct. 2126, 2130, 109 L.Ed.2d 588 (1990) ("Our construction of the term "debt" is guided by the fundamental canon that statutory interpretation begins with the language of the statute itself.") (interpreting the term "debt" as it appears in the Bankruptcy Code). Section 3002(3) defines "debt" as "an amount that is owing to the United States on account of a direct loan" (subsection (A)) or "on account of a fee, duty, lease, rent, service, sale of real or personal property, overpayment, fine, assessment, penalty, restitution, damages, interest, tax, bail bond forfeiture, reimbursement, recovery of a cost incurred by the United States, or other source of indebtedness to the United States" (subsection (B)). An NLRB back-pay award to private employees is simply neither an amount owing to the United States nor an indebtedness to the United States. While the analysis might be different if the United States had previously satisfied the employees' claims and was itself looking to recover by way of subrogation, those circumstances are not presented here.

The majority's holding that NLRB back-pay awards can be considered debts "owing to the United States" that would trigger the FDCPA's debt-collection procedures also conflicts with the Supreme Court's holding in *Nathanson v. NLRB,* 344 U.S. 25, 73 S.Ct. 80, 97 L.Ed. 23 (1952), that back-pay awards are not debts owing to the United States government. *Nathanson* held that Bankruptcy Act provisions giving priority to debts owed to the United States did not apply to NLRB back-pay awards, despite the fact that the Board is an agency of the United States and has the exclusive power to pursue back-pay awards on behalf of workers. The Court stated: "We cannot ... give priority to a claim which the United States is collecting for the benefit of a private party.... The beneficiaries here are not wards of the Federal Government; they are wage claimants who were discriminated against by their employer." 344 U.S. at 28, 73 S.Ct. at 82 (citation omitted).

The majority says *Nathanson* supports its decision because the Supreme Court still held that since "Congress has made the Board the only party entitled to enforce the Act," *id.* at 27, 73 S.Ct. at 82, the Board could be a claimant in the bankruptcy court on behalf of the workers owed back-pay awards. However, it is quite natural that the Court in *Nathanson* held that the Board may be a claimant in bankruptcy court, considering that the Board is the only entity empowered by Congress to enforce back-pay awards. Nonetheless, even though the Board may claim back-pay awards in the bankruptcy court, and even though the Board is an agency of the United States, "[it] does not follow that ... any debt owed is a debt owing to the United States." *Id.* at 27, 73 S.Ct. at 82. The Board is merely the

vehicle by which the claimants can obtain their individual awards; the claimants themselves are not "wards of the Federal Government." *Id.* at 28, 73 S.Ct. at 82.

Applying *Nathanson*'s holding that NLRB back-pay awards are not debts of the United States is more consistent with the FDCPA's legislative purpose than the course chosen by the majority. According to the House report, the FDCPA was intended to address the growing problem of delinquent debts owed the United States, in great measure due to defaults in various government loan programs, with the goal of "lessening the effect of delinquent debts on the massive federal budget deficit now undermining the economic well-being of the Nation." 1990 U.S.C.C.A.N. at 6631. As compared with the recovery of defaulted loans and other true "debts," NLRB awards have absolutely no impact on government revenues. As the *Nathanson* court astutely recognized with respect to NLRB back-pay awards, "[t]here is no function here of assuring the public revenue." 344 U.S. at 28, 73 S.Ct. at 82. The enforcement of NLRB back-pay awards, while it could have been a valid public policy goal of Congress, simply was not among the concerns of Congress when it passed the FDCPA.

That the FDCPA was never designed as a vehicle for the enforcement of NLRB back-pay awards is made even more clear by the procedural snarl created by the Board's enforcement proceedings in this case. The Board has shoe-horned its post-award action to attach assets in conjunction with a contempt petition into the FDCPA's procedures for *prejudgment* writ of garnishment. The prejudgment garnishment provisions permit the government to apply for a writ of garnishment "in conjunction with the complaint or at any time after the filing of a civil action on a claim for a debt...." 28 U.S.C. § 3101. However, the Board sought a writ of garnishment after it filed a petition for civil contempt for non-compliance with the NLRB order. No civil action on a claim for a debt has been filed, nor could one be filed, since compliance with an NLRB order, after a court of appeals issues an order enforcing it, may only be obtained by means of a con-

tempt petition in the court of appeals. 29 U.S.C. §§ 160(e), (f). *See NLRB v. P*I*E Nationwide, Inc.*, 894 F.2d 887, 890 (7th Cir.1990). While it might have furthered a desirable policy for Congress to have provided a mechanism in the FDCPA for attachment of assets in conjunction with an NLRB contempt petition, Congress did not do so, and it is not this court's place to effectively redraft the FDCPA to include NLRB back-pay enforcement proceedings.

To get the result it wants, the Board is forced to argue that we should not read the terms "complaint" and "civil action" literally. However, these are precise terms that Congress opted to use in the FDCPA rather than looser terms such as "action" or "proceeding." According to the legislative history, the FDCPA was aimed at facilitating the recovery of sums owed the United States due to defaulted loans and other obligations owed the United States. It follows that use of the terms "complaint" and "civil action"—terms used to describe the specific debt collection procedures—was deliberate. Actions to recover debts such as defaulted loans fit neatly into the language and procedures of the FDCPA; contempt proceedings to enforce back-pay awards do not.

The misfit between the Board's action and the FDCPA is illustrated by the way the Board commenced the proceedings. The Board failed to comply with the service-of-process requirements of the FDCPA, which require that service be made in accordance with the Federal Rules of Civil Procedure. Since it brought a contempt proceeding, the Board of course did not comply with Fed. R.Civ.P. 4, which deals with commencing actions. To this the Board replies that it only had to comply with Rule 5, which governs service of papers once an action has been commenced. The Board reasons that its contempt petition was in conjunction with the earlier proceedings before the NLRB which resulted in the order, and that since proper service was made in that action, service in compliance with Rule 5 was sufficient. However, the Board brought this action under the FDCPA as a *prejudgment* writ of garnishment filed in conjunction with the contempt petition, which it argues out of the other side

of its mouth is effectively the same as a complaint in a civil action on a claim for a debt. But if a contempt petition is really another form of a complaint in a civil action, then Rule 4, not Rule 5, would apply. In arguing that Rule 5 applies, the Board of course reveals the true nature of this proceeding: an attempt by the Board to enforce a back-pay award through the court of appeal's contempt power, not a civil action. Such proceedings are wholly outside the provisions of 28 U.S.C. § 3101.

There is a difference between the Board's action to enforce a back-pay award owed to private employees in a court of appeals contempt proceeding and a prejudgment writ of garnishment in conjunction with a civil action on a claim for a debt owed to the United States government. The FDCPA was designed to accommodate the latter only. Because I think the majority's holding conflicts with the Supreme Court's decision in *Nathanson* as well as the language and purpose of the FDCPA, I respectfully dissent.