**In re James H. CROCKETT, Debtor.**

**Bankruptcy No. 96–13449FM.**

United States Bankruptcy Court,
W.D. Texas,
Austin Division.

Jan. 27, 1997.

Conde Thompson Cox, Cox & Rodnick, Austin, TX, for Debtor.

Robert A. Goldberg, U.S. Dept. of Labor, Office of the Solicitor, Dallas, TX, for DOL.

## MEMORANDUM OPINION

FRANK R. MONROE, Bankruptcy Judge.

The Court held a hearing on January 21, 1997, on the Debtor's Expedited Motion for Clarification and Enforcement of Stay. At the conclusion of the hearing the Court made oral findings of fact and conclusions of law on the record on all the issues before it, but one. That issue was taken under advisement. The Court has considered the arguments of counsel for the parties on that matter, the exhibits presented by counsel for the Debtor, the case law provided by both counsel, and the Court's own independent legal research. Based thereon this Memorandum Opinion is issued as written findings of fact and conclusions of law under Bankruptcy Rules 7052 and 9014 and incorporates by reference the Court's previous oral findings of fact and conclusions of law.

### Findings of Fact

There is a long procedural history of litigation between these parties. For the purposes of this Opinion the salient facts are that the Debtor was assessed civil money penalties in the amount of $202,000.00 for alleged repeated violations of sections 6, 7, and 15(a)(2) of the Fair Labor Standards Act, 27 U.S.C. § 201, *et seq.* (hereinafter "FLSA"). The Debtor timely filed an exception to the assessment. A formal administrative hearing was scheduled for November 18, 1996, before a Administrative Law Judge for a final determination with respect to the alleged violations. Although that review was to be *de novo*, it was limited to (1) whether the Debtor committed repeated or willful violations of Section 6 or 7 of the FLSA, and (2) whether the penalty currently assessed is appropriate. On November 15, 1996, the Debtor filed a petition under Chapter 11 of the Bankruptcy Code. Debtor's bankruptcy counsel notified the Administrative Law Judge of the bankruptcy filing. On November 15, 1996, subsequent to the notification, the Administrative Law Judge issued an Order Denying Motion to Stay stating, that "the case scheduled for trial Monday, November 18, 1996, is exempt from the automatic stay proceedings under 11 U.S.C. § 361(b)(4). *cf. Board of Governors v. Mcorp* (sic) *Financial,* [502 U.S. 32] 112 S.Ct. 459 [116 L.Ed.2d 358] (1991)." Thereupon, the Debtor filed his Motion for Clarification and Enforcement of Stay with this Court. On December 2, 1996, the Administrative Law Judge suspended his administrative proceedings pending a ruling by this Court.

### Issue

Are the administrative proceedings which were pending before the Office of Administrative Law Judges stayed or are they excepted from the automatic stay pursuant to 11 U.S.C. § 362(b)(4) and (b)(5)? [1]

### Conclusions of Law

■ The Debtor relies on *In re Eagle Bus Manufacturing, Inc.,* 158 B.R. 421 (S.D.Tex. 1993) in support of his argument that the stay applies to these administrative proceedings. In *In re Eagle Bus Manufacturing* the issue was whether the Ohio Bureau of Employment Services was entitled to relief from the automatic stay to redetermine the debtor's unemployment compensation experience rating. The District Court held that they were not and distinguished two earlier Fifth Circuit cases, *National Labor Relations Board v. Evans Plumbing Company,* 639 F.2d 291 (5th Cir.1981) and, *In the Matter of Commonwealth Oil Refining Co.,* 805 F.2d 1175 (5th Cir.1986). In pertinent part the District Court said,

---

1. Section 362(b)(4) and (b)(5) state,

"[t]he filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970, does not operate as a stay—

(4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

(5) under subsection (a)(2) of this section, of the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power."

"Evans and Commonwealth clearly support the proposition that a governmental unit in certain instances may bring action against a bankruptcy petitioner under § 362(b)(4) to enforce its police or regulatory power and have a monetary judgment entered against said petitioner under § 362(b)(5). However, as stated above it was clearly the intent of Congress that the application of § 362(b)(4) be limited to governmental units seeking to prevent or stop the violation of particular laws or seeking to recover damages arising from the violation of such laws. A study of legislative history further shows the intent of Congress to limit the application of § 362(b)(4) to actions by a governmental unit seeking to protect public health and safety. Accordingly, this Court finds the facts in the case at bar clearly distinguishable from those in Evans and Commonwealth and further finds the holdings in both Evans and Commonwealth to support the Bankruptcy Court's ruling.

Unlike the NLRB in Evans, Ohio Bureau did not seek to have the automatic stay lifted so that it could bring suit against Greyhound for allegedly violating federal or state labor laws; and unlike the EPA in Commonwealth, Ohio Bureau did not move the Bankruptcy Court to lift the stay to permit the prosecution of federal and state environmental law and regulation violations. *In fact Ohio Bureau did not bring suit against Greyhound alleging a violation of any law and as such does not seek damages for the alleged violation of any law. Rather, the Ohio Bureau seeks to protect its pecuniary interest in the property of Greyhound the debtor or property of Greyhound's estate by liquidating its tax claim against Greyhound. The Ohio Bureau's tax claim is not based on the violation of any law and was not pursued in an effort to protect the public health and safety of the citizens of Ohio.* Pursuant to Congress' intent that the exception under § 362(b)(4) and (5) be narrowly construed, this Court is of the opinion that Ohio Bureau's claim does not fall within the ambit of the exception § 362(b)(4) and as such the Ohio Bureau was not entitled to seek the entry of a monetary judgment against Greyhound." (emphasis added).

*In re Eagle Bus Manufacturing*, 158 B.R. at 427–428.

■ Clearly, *In re Eagle Bus Manufacturing* is distinguishable from this case on the facts. Here the United States Department of Labor (hereinafter "DOL") is alleging violations of federal labor law. The Debtor has already been assessed civil penalties for such alleged violations. All that remains is the final determination that such violations were repeated and willful and, thus, civil penalties were properly assessed pre-bankruptcy. This is a far cry from a state agency attempting to relitigate the amount potentially owed it where no violation of federal or state law has been alleged. Here the DOL is seeking, not to protect or increase a pecuniary interest in the property of this Debtor by liquidating its claim, but to prevent further alleged violations of federal law by this Debtor and to penalize him under the applicable FLSA statutes for prior alleged acts. These administrative proceedings can best be characterized as of a deterrent nature designed to protect the public from further alleged unlawful labor practices by the Debtor.[2]

The bankruptcy court was faced with a similar situation in *In re Ngan Gung Restaurant, Inc.*, 183 B.R. 689 (Bankr.S.D.N.Y.

2. In the Debtor's Supplement to Reply of Counsel to Respondents' Second Order to Show Cause (Exhibit # 13 of Debtor) the Debtor contends that the governmental unit's police or regulatory powers should not apply since the Debtor is not "alleged to be a continuing polluter or alleged to be a continuing labor law violator" and the proceeding is not one to cease and desist or for injunctive relief. Case law holds otherwise. *Brock v. Rusco Industries, Inc.*, 842 F.2d 270 (11th Cir.1988); *In re Dervos*, 37 B.R. 731 (Bankr.N.D.Ill.1984); and, *In re Quinta Contrac-tors, Inc.*, 34 B.R. 129 (Bankr.M.D.Pa.1983). Further, this Debtor has previously violated a 1987 consent judgment entered into with DOL that permanently enjoined the Debtor from violating minimum wage, overtime compensation, and recordkeeping provisions of FLSA. If this Debtor's past history is any indicator then it can be said that, "voluntary discontinuance of improper or illegal activity is no assurance that such activity will not be resumed." *State v. Midland Equities of New York, Inc.*, 117 Misc.2d 203, 458 N.Y.S.2d 126, 128–29 (Sup.Ct.1982).

1995). There the debtor sought a declaratory judgment that a state court action to enjoin the debtor from violating minimum wage requirements and to pay restitution to the debtor's employees constituted a violation of the automatic stay. After an exhaustive review of cases involving § 362, the DOL and the NLRB, the bankruptcy court ruled that the state's action was exempt from the stay provisions of § 362. The court concluded that the state's action was merely an effort to enforce its police and regulatory powers and to protect businesses in compliance with wage laws from unfair competition by those who were not in compliance. Accordingly,

> "[t]he remedies sought by the [Attorney General] are not designed to advance the government's pecuniary interest. Neither are they designed to advance private rights. Rather the request to enjoin defendants from further violations of the [New York State Labor Law] and the request for unpaid wages and liquidated damages are simply a method of enforcing the policies underlying [that law]." (citations omitted).

*In re Ngan Gung Restaurant,* 183 B.R. at 695.

> The bankruptcy court acknowledged that, "[L]itigation by governmental units to enforce federal and state labor laws uniformly has been excepted from the stay under § 362(b)(4). *The exception has been applied to actions seeking to* enjoin, or *assess penalties on account of, improper labor practices and to cause employers to make restitution payments to employees.* · The courts reason that those kinds of actions promote public policy by protecting legitimate businesses from unfair competition, and that they are neither intended to adjudicate private rights, nor calculated to advance the government's pecuniary interests." (emphasis added).

*In re Ngan Gung Restaurant,* 183 B.R. at 691, 692.

The Fifth Circuit has previously recognized the automatic stay does not apply in

cases factually similar to this one. See, *National Labor Relations Board v. Evans Plumbing Company,* 639 F.2d 291 (5th Cir. 1981) and, *In the Matter of Commonwealth Oil Refining Co.,* 805 F.2d 1175 (5th Cir. 1986).[3]

In *National Labor Relations Board v. Evans Plumbing Company* the NRLB sought a summary judgment enforcing the Board's decision that the debtor be required to reinstate with back pay two employees discriminatorily discharged by the debtor. The debtor argued that the NLRB proceedings, which resulted in the Board's decision, should have been stayed by the automatic stay provision of the Bankruptcy Act of 1978. The Fifth Circuit rejected the debtor's position and held that this enforcement proceeding by the NLRB fell within the exception to the automatic stay provision. The Fifth Circuit stated,

> "[t]he crucial issue is whether the NLRB is a governmental unit and whether this action is one to enforce police or regulatory powers. It is clear that the NLRB is a governmental unit. This action was undertaken to enforce the federal law regulating the relationship between employer and employee. We can safely conclude therefore that this is an exercise of police or regulatory powers which places it within the § 362(b)(4) exemption to the automatic stay."

*National Labor Relations Board v. Evans Plumbing Company,* 639 F.2d at 293.

■ Applying the Fifth Circuit's analysis to this case, it is indisputable that the NLRB is a governmental unit. Likewise, this administrative proceeding was clearly undertaken to enforce the federal law regulating the relationship between employer and employee. That same law provides for the assessment of civil penalties in the event of a finding of violation of that law. "Once proceedings are exempted from the stay, the governmental unit is also allowed to 'fix the amount of penalties, up to and including entry of a money judgment'". *National Labor*

---

**3.** The Second and the Sixth Circuit are in accord with the Fifth Circuit in finding that certain NRLB proceedings are exempt from the provisions of the automatic stay. See, *National Labor*

*Relations Board v. E.D.P. Medical Computer Systems,* 6 F.3d 951 (2nd Cir.1993), and *National Labor Relations Board v. Edward Cooper Painting, Inc.,* 804 F.2d 934 (6th Cir.1986).

*Relations Board v. Edward Cooper Painting, Inc.*, 804 F.2d at 942–43. See also, *National Labor Relations Board v. E.D.P. Medical Computer Systems, Inc.*, 6 F.3d at 957. This Court can safely conclude, therefore, that this administrative proceeding is an exercise of police or regulatory powers which places it within the § 362(b)(4) exemption to the automatic stay.

■ Further, the Fifth Circuit has stated that It is not necessary for the DOL to establish that there is imminent and identifiable harm or urgent public necessity before the police or regulatory power exception to the automatic stay applies. *Commonwealth Oil Refining Co.*, 805 F.2d at 1184–85.

This broad authority of administrative entities to exercise their police or regulatory powers versus the limited authority of bankruptcy courts to examine the exercise of those powers was specifically addressed by the U.S. Supreme Court in *Board of Governors of the Federal Reserve System v. MCorp Financial, Inc., et al*, 502 U.S. 32, 112 S.Ct. 459, 116 L.Ed.2d 358 (1991).

There, like this case, the Board of Governors had issued a "Notices of Charges and of Hearing" notifying the debtor of its intent to determine whether certain statutory and regulatory provisions of the Federal Reserve Act had been violated.

The debtor, as here, argued that the administrative proceedings were stayed as an act to obtain possession of, or control over; property of the estate, or to recover claims against the debtor arising pre-bankruptcy. The U.S. Supreme Court rejected this argument.

The U.S. Supreme Court said,

"[i]t is possible, of course, that the Board proceedings, like many other enforcement actions, may conclude with the entry of an order that will affect the Bankruptcy Court's control over the property of the estate, but that possibility cannot be sufficient to justify the operation of the stay against an enforcement proceeding that is expressly exempted by § 362(b)(4). To adopt such a characterization of enforcement proceedings would be to render subsection (b)(4)'s exception almost meaning-less. If and when the Board's proceedings culminate in a final order, and if and when judicial proceedings are commenced to enforce such an order, then it may well be proper for the Bankruptcy Court to exercise its concurrent jurisdiction under 28 U.S.C. § 1334(b). We are not persuaded, however, that the automatic stay provisions of the Bankruptcy Code have any application to ongoing, nonfinal administrative proceedings."

*MCorp Financial*, 502 U.S. at 41, 112 S.Ct. at 464.

For the reasons stated above, it is eminently clear to this Court that these ongoing administrative proceedings pending before the Office of Administrative Law Judges in this case are excepted from the automatic stay by virtue of 11 U.S.C. § 362(b)(4) and (b)(5).

An Order of even date herewith will be entered in accordance with this Court's Memorandum Opinion.